Chief Justice Simpson
delivered the opinion of the Court.
^-A'n act- of the Legislature was passed in the year 1849, (Sess. acts, 1848-9, page 382,) to amend the charter of. the Licking and Lexington Railroad Company, by which the corporate name of the company was changed to the “Covington and Lexington Railroad Company,” and in the eighth section of the act, it was provided that the counties of Kenton, Pendleton, Grant, Harrison, Scott, Bourbon, and Fayette, might subscribe to the capita] stock of said company, not exceeding one hundred thousand dollars each, and • might borrow money to pay the same ; Provided,the real estate holders residing in each county, should by a majority, so vote, at such time as the County Court of each might appoint. The stock subscribed by counties, and the loans obtained by them to be charges upon real estate, to be determined by assessments upon the realty, made by the County Courts.
At the next session of the Legislature, (Sess. acts, 1849-50,page 378,) it was enacted “that the counties of Kenton, Pendleton, Harrison, Bourbon, and Fay-ette, for the purpose of making payment of their subscriptions to the stock of said company which they are authorized to make, the County Courts of said counties shall levy and collect a tax on the taxable property within the jurisdiction of each, not exceeding over one-half *145 of one per cent per annum for five years, to be collected as the revenue tax is collected; Provided, that before a subscription shall be made, and the tax levied, the question of levying the tax shall be submitted to the voters of the county; and if a majority of the votes cast shall be in favor of the tax* the same shall be levied.”
By the third section of the same act, it was enacted, “ that the County Courts of the counties aforesaid shall appoint a day for the vote to be taken, and shall give sufficient public notice thereof; and when a majorit the votes cast shall be in favor of a subscripti'O' Court shall immediately subscribe the same, in ac> anee with the vote.” rd-
Afterwards, during the same session of the I( ture, (Sess. acts, 1849-50, page 580;) a supplement was passed, by which the County Courts in said c<? ties for the purpose mentioned in the previous act, are directed to levy and collect a tax on the taxable property, within the jurisdiction of each, not exceeding one per cent, per annum for three years; to be collected as the revenue tax is collected; Provided, that before a subscription shall be made and the tax levied, the question of levying the tax shall be submitted to the voters of the county, and if a majority of the votes cast shall be in favor of the tax, the same shall be levied: isla-
At the March term, 1850, of ihe Kenton County Court, it was ordered that a vote should be taken in the county for and against the proposed tax, on the first Monday and Tuesday in May, being the same time that a vote was to be taken upon the adoption of the new constitution ; and the sheriff was directed to open a poll at the several places of voting in the County, and to propourtd to each voter the question: ‘‘are you for or against the railroad tax?” and to have the votes recorded as they were given.
The vote was taken upon the subject at the time appointed, and a considerable majority of the votes cast was in favor of the tax; but some of the votes as recorded were for the tax simply, some for oné per cent., and some for one per cent, per annum for three years.
Rulo for mandamus to Kenton County Court.
Substance of the return to the rule for mandamus*
Decision of the Circuit Court up on the rule for •mandamus.
At the May term, 1850, of the Kenton County Court, after the vote had been taken, the Railroad Company by its President moved the Court to make an entry on its records, that it thereby subscribed stock in said railroad, equivalent in amount, to one per cent, per annum, for three years upon all the taxable property in Kenton county on behalf of the owners of the property; and also to enter an order levying a tax of one per centum per annum, for three years upon the taxable property in the county ; which orders the Court refused to make, and overruled the motion.
An application by petition in the name of the Railroad Company was subsequently made to the Circuit Court in Kenton county, for a mandamus against the County Court to compel it to enter up the orders as required, in obedience to the several acts of the Legislature amending the charter of the Company, and a rule was made by the Circuit Court, requiring the County Court to show cause if any it had, why the writ of mandamus should not issue according to the prayer of the petitioners.
The County Court made a return to the rule, and set forth therein, in extenso the reasons that determined it to refuse to enter up the proposed orders. Those reasons may be comprised under two general heads.
First — That the acts of the Legislature conferred no right upon the Railroad Company, and imposed no duty ■upon the County Court, which was legally enforcible, because they were impolitic, oppressive and unconstitutional.
Second — That under the several acts of assembly relating to the subject, the stock subscribed by the county was not to exceed one hundred thousand dollars, whereas the subscription of stock, to the amount of one per centum per annum, for three years on the whole taxable property of the county, demanded by the Company according to the proposed order wouldexceed two hundred thousand dollars. That the vote as cast was uncertain, and did not determine the amount of the tax, *147 but only that a tax not exceeding one per centum per an-num should be levied, leaving the precise amount unsettled and undefined, and that according to a fair and reasonable construction of the several acts of the Legislature, the County Court had a discretion, if not to refuse to subscribe altogether, at least as to the amount to be subscribed, not exceeding one hundred thousand dollars, or if that was not the limit, not exceeding one per centum per annum, for three years upon the taxable property in the county.
Question presen» ted for decision.
The Legislature have the poweit ‘to take away by statute what has been grauted by statute, unless rights have vested under the law before its repeal’ or to revoke an authority given before any right has been acquired under that authority. And the repeal of a statute puts an end 10 all proceedings under it, un less rights have accrued under it which cannot be divested* (6 Wen del1, 531; 2 R. Monroe, 402.) T.he amendatory acts of the Legislature, for taking the vote of the people in l^cntpn & other counties in relation to a tax, to be laid for making the Gov. and Lex. Railroad, was amere privilege to take the vote of the people as to their desire to become stockholders in the road, a conferred no rights which prevented the Legislature from repealing them.
*147 The application for the writ of mandamus was heard at the July term, of the Circuit Court, and that Court being of the opinion .that the County Court, had a discretion as to the amount of stock to be subscribed by the county, and was under no obligation to take stock, to the amount demanded by the Company, refused the writ, and discharged the rule against the County Court. From that decision of the Circuit Court, the Railroad Company have appealed.
Since the case was decided in the Circuit Court, an act has been passed by the Legislature, repealing the act and supplemental act aforesaid, amending the charter of the Railroad Company, so far as said acts relate to the county of Kenton. The repealing act is relied upon as having divested the County Court of all power to subscribe for the stock, and consequently as having deprived the Railroad Company of the right to require it to be done. ■ We will in the first place consider the consequences of the repeal of the law under which the parties were acting, for it is obvious, if its effect be such as is ascribed to it by the opponents of the claim asserted by the Company, a writ of mandamus cannot now be-awarded against the County Court, and the order of the Circuit Court, discharging the rule, ought not to be reversed, were it even conceded, that it would have been proper when the motion was tried, to have awarded the writ.
It cannot be denied that the Legislature possesses the power and the right, to take away by statute, what *148 has been given by statute, unless rights have vested under the law before its repeal. If the Legislature delegate an authority, it can certainly be revoked before the power has been exercised in such a manner as to create a vested right. Individuals have this right of revocation, and it must from its very nature exist in the Legislature, co-extensive with the right of the latter to delegate any of the powers properly belonging to that department of the government. A repeal of a statute, necessarily terminates all proceedings under that statute, unless rights have accrued under it which cannot be legally divested: (6 Wendell, 531, 2 B. Monroe, 402.)
But if th.13 privilege has been so exercised that rights had been vested under its exercise, the Legislature had not the power to repeal so as to diVQSt those lights:
The Legislature has the same power to repeal or modify acts of incorporation, until rights have accrued under them, unless the repeal would impose upon the corporation some additional burthens or liabilities, that it has to repeal or alter any other statute. The power to create necessarily implies its power to abrogate or annul, but the exercise of the power to accomplish the latter object is.subject to constitutional limitations, imposed for the purpose of guarding against legislative aggression upon vested rights. Although therefore, the acts repealed, were amendments to the charter of the Railroad Company, yet if no rights had vested under their operation, and the powers conferred by them had not been fully exercised, and their repeal did not impose upon the company any additional burthens or liabilities, or deprive it of any certain or positive advantage, the Legislature had the right to repeal the amendatory statutes, and their repeal puts an end to all further pro-, ceedings under them.
Did then the Railroad Company acquire any vested lights by the passage of the acts amending the charter, or by any action that was had by virtue of their provisions ? It is evident that they were not passed for the purpose of conferring upon the company any additional powers or privileges, nor did they purport a cession tó the. company of any corporate right. As amendments *149 to the charter, they were nugatory and inoperative until acted upon according to their provisions, and if the voters in the enumerated counties, refused to sanction a subscription of stock in the manner contemplated, they became useless and unprofitable. The only advantage the company could derive from them, consisted in having the question submitted to the voters in the respective counties, whether or not they would author ize the County Courts to subscribe for stock, and levy a tax for its payment.' It was a mere right, if it can be properly denominated a right, to make application to certain counties to take stock in the road, an application wheih they might reject at their discretion, and from which, therefore, the company might never derive any benefit, and which consequently was an advantage merely in anticipation, and of a character too unsubstantial, ideal, and shadowy, to constitute a legal right or to be the subject of legal protection.
The only question submitted to the people of Kenton was whe ther they were willing to be etl not exceeding one per cent, for three years, leaving the rate below thatper to be fixed by the County Court, until this was done, and a subscription made to the Railroad, the company had acquired no right which could affected by there-peal of the amen datory acts, and! therefore the con, stitutional right to repeal existed.
Although, however, the amendments to the charter did not per se secure to the company any certain privilege or advantage, the question still occurs, had such action been had under them as to create a right in the company, that could not be prejudiced constitutionally by legislation, and which rendered their repeal invalid? The authority which they conferred, to be operative, had to be exercised by both the voters of the county, and the County Court. The vote taken, amounted to an expression of assent on the part of the voters, that stock to some amount should be subscribed by the County Court. If under the charter as amended, the duty of determining the amount of stock to be subscribed, devolved upon the voters, that duty had not been performed. If on the contrary it devolved upon the County Court, it had a discretionary power as to the amount, which in effect invested it with unlimited control over the whole subject. If a general vote resulting in favor of the tax had the legal effect to impose upon the County Court the duty, and to give it the power of subscribing stock to the amount of one per cent per annum on. *150 the taxable property of the county, the duty had not been performed, or the power exercised, and therefore no liability on the one side, or corresponding right upon the other had been authoritatively created, when the amendment to the charter was repealed. Regarding the voters as the principals in the transaction, and the County Court as their agent, and the law as determining the amount of the subscription, then what occurred might be considered as an expression of willingness upon the part of the principals to take a certain amount of stock in the road, accompanied by a positive and unconditional direction to the agent to subscribe for the same immediately. As however, the agent failed to make the subscription as directed, the stock was not subscribed and consequently no liability has been imposed upon the principals. And as the power under which the principals acted has been withdrawn, the authority to the agent has ceased also, and no further steps can be taken towards the accomplishment of the contemplated object. Until an actual subscription of the stock was made, no right to it vested in the company, and although if a legal duty had devolved upon the County Court, the performance of which would create and vest a right in the company, it might demand the performance of that duty for its benefit, yet when the Jaw imposing the duty has been repealed, the duty itself no longer exists, and its performance cannot be enforced.
.The-yoters not Jiving fixed the .rate of tax, ilie County.Conrthad -i-and not-having ¡do.fie ¡so before ■the -Legislature ¡repealed the act giving the power to do so, it cannot now act in the premises.
But whether this conclusion be correct or not is not material in this case, as the language of the statute, In our opinion, forbids the interpretation, that by a general vote in favor of the tax, the amount was fixed by the charter as amended, at one per cent, per annum for three years on the taxable property in the county. The tax was not to exceed that rate, but its actual amount had to be determined either by the County Court or the voters of the county. The only question submitted to the .voters by the County Court, was, whether “they were for or against the railroad tax.” The railroad tax was not to exceed one per cent, per annum for three *151 years, but it might be less. The question as to the amount of the tax was not submitted to the voters, and consequently was not decided by them. If they, and not the County Court, had the legal right to decide it, another vote was necessary for that purpose. If it had been understood by the County Court and the voters, that a vote in favor of the tax should be regarded as a decision in favor of the maximum authorized by the statute, then it should have the effect intended to be given to it by the parties. But as the terms in which the question was submitted to the voters, do not necessarily imply such an understanding, and its existence was denied by the County Court, who claimed the right itself to determine the amount of the tax and the stock to be subscribed, the deduction that such an understanding existed, is wholly unauthorized and inadmissiole. A controlling power then, over the whole subject still remained either in the County Court or the voters of the county; for until the amount of the tax was legally determined the right to do it still existed, and the exercise of the right might result in the reduction of the tax to a rate so low, as to render it of little or no benefit to the company.
Viewing the case in all its various aspects, we are not able to perceive any right which had accrued to the company under the amendment to its charter, previous to .the repeal of the amendment by the Legislature. Nor can we perceive that the company, by the repeal, has been deprived of any certain positive advantage, or subjected to increased burthens or-liabilities. Nor does it even appear, nor was it alleged in the petition of the company praying for .a mandamus, that the prospect, although uncertain, of obtaining from the county of Kenton, a subscription of stock to the full amount authorized by law, had induced the subscription of other stock, or caused the company to incur obligations or liabilities which it would not have otherwise incurred. No obstacle then existed to the exercise of the right of repeal by the Legislature, and the repealing *152 act being valid, nothing further can be done under provisions which, though once contained in the charter, have ceased to.exist.
Harris for plaintiffs; Carpenter, Menúes, Stansifer, and Kinkead for defendants.
The order of the Circuit Court, overruling the motion of the-Ilailroad Company, and refusing to award a mandamus, should not, therefore, be reversed, even if it were erroneous when made, inasmuch as no other order could now be directed to be entered up. But it will be perceived, from the reasoning relied upon to illustrate the proposition, that theRailroad Company had acquired no rights under the charter as amended, at the time the repealing statute was passed, that the amount of the tax and subscription had not been definitely ascertained, and whether the power to regulate and determine it was vested in the County Court or the voters of the county, was immaterial, as in either case the power remained still to be exercised, and the company had no legal right to require the County Court to subscribe for its stock, to an amount equivalent to the highest rate at which the tax could possibly be fixed, and that consequently, whether the amendment to the charter was or not constitutional, the decision of the Court below was right upon this ground alone.
Wherefore the order of the Circuit Court refusing lo award a writ of mandamus and discharging the rule against the County Court is affirmed.