THE BOARD OF COMMISSIONERS OF CRAWFORD COUNTY *v.* THE LOUISVILLE, NEW ALBANY, AND ST. LOUIS AIR LINE RAILWAY COMPANY.

CONSTITUTIONAL LAW.—*Incorporated Company.*—A county cannot, under section 6 of article 10 of the constitution, take stock in any incorporated company without paying the money down; and section 17 of the act of May 12th, 1869, for aiding railroads, does not conflict with this provision of the constitution.

STOCK IN INCORPORATED COMPANY.—*County Commissioners.—Voters.*—All the acts of county commissioners and the voters of a county, in taking steps to raise money to take stock in an incorporated company, are between themselves, one the principal, and the other the agent; there is no contract with the incorporated company, nor has she any right in, or control over, the matter, until the money is raised and the stock taken.

SAME.—*Mandate.*—One or more of the voters might, in such case, maintain a suit for a mandate against the commissioners, to compel them to act, but the incorporated company cannot maintain such suit.

SAME.—Where money is raised for the purpose of taking stock in a railroad company, the company cannot have any of the money until she has fully constructed the road, so that cars shall pass over the same; and no one but a petitioner, or a tax-payer, can have a mandate to compel the payment of the money.

APPEAL from the Vanderburg Circuit Court.

## MAY TERM, 1872. 193

Comm'rs of Crawford Co. *v.* The L., N. A., & St. Louis Air Line R. W. Co.

PETTIT, J.—This suit was brought by the appellee for a peremptory mandate, to compel the appellant to levy a tax, which it was alleged had been voted by the people of Crawford county to aid in the construction of appellee's road, by taking stock therein, under act of May 12th, 1869.

It will be a sufficient statement of the complaint to say it showed that all of the preliminary steps had been properly taken, including the vote and its proper return, showing a majority of forty-four votes for the appropriation, in December, 1869; that at the regular June session of 1870, the appellant had been requested by the appellee, by her attorneys, to levy the tax, and that appellant refused to do so, and a peremptory mandate was asked to compel the performance of this alleged duty on the part of the appellant. To this complaint the appellant demurred, on the grounds and in the form following: first, because the complaint does not state facts sufficient to constitute a cause of action; second, because the plaintiff has not legal capacity to sue and maintain this action, because, first, the complaint does not show that the plaintiff is a resident or tax-payer of Crawford county, and does not show that the plaintiff has any legal interest in the subject-matter of the action; second, the complaint does not show that the defendant has subscribed stock in the plaintiff's railroad, or that she is authorized by law to subscribe stock; third, the complaint does not show that any money has been levied or collected or any subscribed by the defendant for plaintiff's railroad, nor that the plaintiff has so far completed her railroad as to be entitled to demand any money which might be subscribed by defendant. Perhaps the first ground of demurrer covers and embraces all the others. The demurrer was overruled, and exception taken, and this ruling presents the first question for our consideration.

Does the complaint show a right in the plaintiff to prosecute this suit, or could the plaintiff at this stage have any right in the money voted, that would entitle her to compel

the defendant to collect the money and invest it in the stock
of the road?   It is a well settled and well known general
principle of the common law, as well as of our statute, that
to enable a plaintiff to maintain an action at law, he must
have a present subsisting legal interest in the matter sued
for, and the present action certainly is no exception to the
general rule.   Article 10, section 6, of our constitution, pro-
vides, that "no county shall subscribe for stock in any incor-
porated company, unless the same be paid for at the time of
such subscription; nor shall any county loan its credit to any
incorporated company, nor borrow money for the purpose
of taking stock in any such company."   The language of
this section cannot be misunderstood.   No county can cre-
ate any liability to any incorporated company without pay-
ing the money down, nor can she loan her credit to any such
company.   All of the acts of the commissioners and the
voters of the county, in taking steps to raise the money, are
between themselves, one the principal and the other the
agent; there is no contract with the company, nor has she
any right in, or control over, the matter, till the money is
raised, and the stock taken.   Till that time, the principal and
agent alone have control of the proceedings.   One or more
of the voters might maintain a mandate against the commis-
sioners, because he or they would have a legal interest in it;
but the company cannot maintain such suit, because she has
no legal interest to enforce, no contract ever having been
made with her.   Nor can the company have any of the
money raised for the purpose of taking stock, till she has
fully constructed the road, so that cars shall pass over
the same.   The 17th section of the act for the aiding of rail-
roads does not conflict with the above section of the consti-
tution, but clearly warrants our ruling.   It is as follows:

"Sec. 17.   After the money authorized by this act to be
appropriated shall have been levied and collected as afore-
said, and the subscription shall have been made on behalf
of the county or township, as the case may be, the railroad
company for whose aid the same shall have been so levied

## MAY TERM, 1872.    195

Comm'rs of Crawford Co. *v.* The L., N. A., & St. Louis Air Line R. W. Co.

and collected, having fully constructed the railroad contemplated in said petition, so that trains of cars shall pass over the same, shall have the right to demand and have said money paid over according to the intent and meaning of this act; and any one of said petitioners, or any tax-payer of the county or township, as the case may be, may compel the same to be done by mandate against the county commissioners."

Here it will be seen that any petitioner or tax-payer may have a mandate. Why? Because they have a legal interest in the matter, but the company cannot prosecute a mandate, because she has no such interest, and under the rule of construction, that the expression of one excludes all others, she is excluded. It is expressed as to who may have a mandate, and this expression excludes all others. The authorities fully warrant us in this ruling. Moses on Mandamus, page 194, says: "It has been held that a private citizen has no right to apply for a mandamus to compel a public officer to perform an omitted duty, in a case where he is not directly injured by its non-performance. That where the public rights are to be subserved, it is for the public officers exclusively, to apply for the writ. *Sanger* v. *The County Commissioners of Kennebec*, 25 Maine, 291; *People* v. *Regents of the University*, 4 Mich. 98; *The People* v. *The Inspectors, etc., State Prison*, 4 Mich. 187." See other cases cited by Moses, on pages 195, 196, *et seq. Aspinwall* v. *The Board of Comm'rs of the County of Daviess*, 22 How. U. S. 364, is a strong authority against the right of the railroad company to maintain this suit. We take the following case from the "Indiana Legal Register," of October, 1871, Vol. 1, No. 1, p. 5:

"Supreme Court of Kansas.

"The Land Grant Railway and Trust Company, and the Union Pacific Railway Company, Southern Branch, *v.* The Board of Commissioners of Davis County.

"*Original Proceeding in Mandamus from Davis County.*

"Valentine, J.—In this action, which is an original pro-

ceeding in mandamus, commenced May 26th, 1870, the plain-
tiffs, the Land Grant Railway and Trust Company, and the
Union Pacific Railway, Southern Branch (now the Missouri,
Kansas, and Texas Railway Company), seek to compel the
defendant, the board of county commissioners of Davis county,
to subscribe to the capital stock of the said Union Pacific Rail-
way Company, Southern Branch, to the amount of one hun-
dred and sixty-five thousand dollars, and to issue in payment
therefor an equal amount of bonds of said Davis county, and
deliver them to said plaintiffs.

"We have already decided, in the case of *The Land Grant
Railway and Trust Company* v. *The Board of County Com-
missioners of Coffey County*, 6 Kan. 245, that the said· Land
Grant Railway and Trust Company had no legal capacity to
transact any kind of business in Kansas, and, therefore, it
follows that this action must be dismissed as to said Land
Grant Railway and Trust Company.

"Whether the Union Pacific Railway Company, Southern
Branch, may proceed as the sole plaintiff, without making a
new application for a writ of mandamus, we are not asked
to decide. We shall, therefore, consider this action as
though commenced by the Union Pacific Railway Company,
Southern Branch, alone.

"On the 15th of July, 1867, the people of Davis county
voted to subscribe to the capital stock of the Union Pacific
Railway Company, Southern Branch, to the amount of one
hundred and sixty-five thousand dollars, and issue in payment
therefor an equal amount of the bonds of said county, upon the
following conditions: first, that one-half of the bonds shall
be issued on the completion of the road ready for the iron,
ten miles from the commencement thereof, and none before,
and that the other half shall be issued on completion of the
next ten miles ready for the rolling stock, making twenty
miles from the starting point to Junction City; second, that
the said road shall be commenced at Junction City within
one year from the date of the election; third, that it shall
be completed through Davis county within two years from

MAY TERM, 1872.                    197

Comm'rs of Crawford Co. *v.* The L.; N. A., & St. Louis Air Line R. W. Co.

the date of the election; fourth, that said bonds shall not issue, in case money or other aid is hereafter received by said company from the United States government; fifth, that the county reserves the right to purchase the bonds at any time after the issue at the market value.

"We will assume, for the purpose of this argument, that every one of the foregoing conditions was fulfilled, so that the county commissioners of said county could have subscribed said stock and issued said bonds, if they had so chosen.

"Said commissioners, however, never subscribed said stock, and never agreed to subscribe the same; and the railway company never asked them to subscribe until about the commencement of their suit.

"The questions arising in this case are as follows:

"First. Was the vote of the people of Davis county of itself a contract between the county and the railway company, which the railway company can enforce? and, if not,

"Second, was said vote of itself a proposition to the railway company, which the railway company could accept and make binding on the county? and, if so, must the acceptance be a formal acceptance in writing, or a verbal acceptance? and when must the acceptance be made? or could the railway company accept the proposition by simply complying with the conditions of said vote?

"But if there was no contract between the county and the railway company, then,

"Third, did the county commissioners, by virtue of said vote, owe a duty to subscribe said stock to any one, which they could be compelled to perform, or had they a discretion in the matter? and if they did owe a duty, to whom did they owe it, the railway company or to the people of Davis county? and if not to the railway company, then is the railway company entitled to a writ of mandamus to compel them to subscribe said stock?

"The nature of a contract is pretty clearly defined in the case of *The State* v. *Barker*, 4 Kan. 379. A contract is 'the

198          SUPREME COURT OF INDIANA.

Comm'rs of Crawford Co. *v.* The L., N. A., & St. Louis Air Line R. W. Co.

agreement of two competent parties, about a legal and competent subject-matter, upon a mutual legal consideration, with a mutuality of obligation.'   1 Ohio St. 657.

"Taking this definition of a contract to be correct, it is clear that no contract was ever made between the county of Davis and the railway company.   No agreement was ever made by either party, and neither party was ever bound.

"It seems to be, partially at least, admitted by the plaintiffs that the vote alone of the people of Davis county did not create a contract between the county and the railway company; but it is claimed that the vote was of itself a proposition to the railway company, which the railway company accepted by performing the condition of the vote, and thereby a contract was created between the railway company and the county, and binding upon the county.   But counties do not act in their primary capacity in making contracts; they act only through their legally constituted agents.

"It is the commissioners of the county only that are authorized to subscribe stock in a railway company, and not the people of the county.   Laws of 1866, p. 72.   And a railway company cannot contract with a county in any way except through the county commissioners.

"The plaintiff claims that this transaction is analogous to the case where a person offers a reward for the recovery of stolen property, or for some other purpose; but there are at least two very great distinctions.

"A. makes a proposition to the whole world that he will pay one hundred dollars reward to the person who will return him his stolen horse.   B. accepts the proposition, impliedly at least, and returns the horse.    Here is a contract binding on A.   But suppose that A. authorized his agent, C., to make the proposition, but C. refused to do so, and the proposition was never made, but that notwithstanding no proposition was ever made, B. returns the horse; is A. liable for the one hundred dollars?   Or suppose that A. offers a reward to B. for building a house on B.'s own land, and just such a house as B. intends to build, whether the proposition

is made or not, and B., without accepting the proposition of A., expressly, builds a house; is A. liable?

"In this case, the people of Davis county did not make any proposition to the railway company, but simply authorized their agents, the county commissioners, to make a proposition to said company to subscribe said stock in the company, provided the company should build their road through Davis county; a thing which it must be presumed the company intended to do, whether the stock was subscribed or not, as the corporation was created and organized, among other things, for that express purpose, long before said vote was had.

"Suppose a railroad company is organized with a capital stock of three hundred thousand dollars, for the purpose of building a railroad from the town of A. to the town of B., and one of the counties through which the road is located, without the express consent of the railroad company, votes to subscribe three hundred thousand dollars of stock in said company when the road shall be completed, and the company proceeds under their charter and builds their road; then is the company bound to allow the county to subscribe said stock, which is all there is, and deliver over to the county their charter, their franchises, and all their property? Suppose the company in the meantime had sold a portion of their stock to individuals, one-half of it, or the whole of it, so that the company could not deliver to the county the three hundred thousand dollars of stock; what then? And suppose that the stock had advanced, and the bonds had depreciated in value, so that the stock was worth the most; would the railroad company then be bound? And if for any reason there is no contract that can bind the railroad company, is there any contract that can bind the county? As a general proposition (with but one exception that I now think of, and that is, where a person of full age contracts with a minor), a contract, to be binding on either party, must be binding on both. 22 How. 364; 12 B. Mon. 144, *et seq.;*

22 Ill. 147, *et seq.;* 18 Barb. 317, *et seq.;* 21 Wend. 139, *et seq.*

"It is our opinion that there never was any contract between the county and the railway company; and therefore, as a necessary consequence, the county commissioners, who are the agents and representatives of the county, and not of the railway company, owe no duty to the railway company; and as a further consequence, the said commissioners could not be compelled, on any application of the railway company, to subscribe said stock.

"The writ of mandamus is refused, all the justices concurring."

This opinion will appear in 6 Kan., which is not in the state law library, and we regard it as clearly in point in the case now in judgment. There was no contract between the parties to this suit, and the company had no right to compel the commissioners to do a thing, the result of which the company would not be bound to accept. If the money had been collected, and the commissioners had offered to take stock and pay for it with the money at par, the railroad company would not be bound to receive the money and deliver the stock; nor would the company have done so, if the stock had risen largely above par. Rights and duties, both in morals and law, are correlative; and he who claims a right must be bound by a duty. As the company was under no legal obligation to receive the money and give stock for it, she could not compel the collection or payment over of the money when collected.

The judgment is reversed, at the costs of the appellee, with instructions to the court below to sustain the demurrer to the complaint.

*C. Denby,* for appellant.