THE BOARD OF COMM'RS OF ST. JOSEPH COUNTY v. RUCKMAN.

CONGRESSIONAL SCHOOL LANDS.—*Assessment of Taxes.*—*Refunding Taxes.*—*Repeal of Statute.*—*Vested Right.*—*Common Law.*—*Clause Saving Pending Actions.*—*Payment.*—Prior to the taking effect of the act of February 8th, 1877, (Acts 1877, Reg. Sess., p. 139,) "declaring school lands. taxable after they have been sold and before deed is made," etc., an owner of ·certain of such lands filed his petition before the proper board of com- missioners, asking the refunding of certain taxes paid thereon by him, .alleged to have been assessed while held by a certificate of purchase, :and before the same had been conveyed by deed. After such act had taken effect, on appeal to the circuit court, upon a special finding of the facts, in accord with the allegations of the petition, and as a conclusion of law thereon, judgment was rendered in favor of the petitioner.
*Held,* that taxes voluntarily paid are not recoverable, except by statute.
*Held,* also, that where a right of action, not existing at common law, is given by statute, a repeal of the same by another statute, containing no clause saving pending actions, takes away such right of action, in all such causes which have not proceeded to final judgment.
*Held,* also, that, prior to the taking effect of such statute of February 8th, 1877, such action could have been maintained under the provisions of the act of March 2d, 1853, (1 G. & H., p. 110,) "in relation to the re- funding of taxes wrongfully assessed and collected."
*Held.* also, that the act of March 2d, 1853, so far as it authorized the re- funding of illegal taxes on school lands, is repealed by the act of Feb- ruary 8th, 1877.

From the St. Joseph Circuit Court.

*A. Anderson* and *L. Hubbard,* for appellant.

*T. S. Stanfield, J. H. Ellsworth, H. Brownlee* and *J. Brownlee,* for appellee.

WORDEN, J.—The appellee filed his claim before the board of commissioners, at their December term, 1876, for the refunding to him of taxes paid by him on certain lands, in section 16, asking that the county portion be re-

funded to him, and that the board order a proper certificate for the State's portion, which had been paid into the state treasury, for the purpose of auditing the same as a claim against the State.

The claim was properly verified.

The board declined, at that time, to hear evidence in support of the claim, and the cause went, by appeal, to the circuit court, where, at the May term thereof, 1877, it was tried by the court, who, upon proper request, found the facts specially, as follows:

"1st. That on the 25th day of November, 1853, the plaintiff, William Ruckman, purchased of the county auditor of St. Joseph county, Indiana, the following described parcels of land, to wit:" here certain lands in section 16, in St. Joseph county, are described; "and took a certificate of purchase therefor. That on the 8th day of December, 1853, William Miller purchased lots," here certain other lands in section 16, in the same county, are described, "from said county auditor, and took a certificate of purchase therefor, which certificate said Miller afterward, in the same year, assigned to said Ruckman, but the legal title to said land remained in the inhabitants of said congressional township 38, until the 5th day of July, 1870, when the legal title to said land was, by the auditor of said county, conveyed to said Ruckman; and that, between the years 1853 and July, 1870, while the title to said land was in the inhabitants of said township, he was annually assessed with the state and county taxes upon said lands, and that during said period he paid state and county taxes as follows:" here follows a detailed statement of the taxes, the state taxes amounting to thirty-one dollars and eighty-nine cents, and the county taxes to fifty-nine dollars and ninety-three cents; "which state, school and sinking-fund tax has been paid into the state treasury, and said county taxes have been paid into the county treasury of said county."

As a conclusion of law upon the facts, the court found, "that the board of commissioners of St. Joseph county, Indiana, ought to have allowed, to be paid out of the county treasury, the sum of fifty-nine dollars and ninety-three cents, and that there should be certified to the auditor of state, for payment from the state treasury, the sum of thirty-one dollars and eighty-nine cents."

To this conclusion of law the appellant excepted, and judgment was rendered for the appellee.

Error is assigned upon the conclusion of law.

The first inquiry that seems to arise in the case is, by what right or authority can the appellee recover back, or have refunded to him, the taxes thus paid, assuming that the lands were not taxable? It must be assumed that the taxes were voluntarily paid, there being nothing in the finding showing that they were paid under compulsion, or even under protest.

Without some statutory provision, taxes thus paid can not be recovered back. *Jenks* v. *Lima Township*, 17 Ind. 326; *Martin* v. *Stanfield*, 17 Ind. 336; *Patterson* v. *Cox*, 25 Ind. 261; *The Town of Ligonier* v. *Ackerman*, 46 Ind. 552; *The Town of Edinburg* v. *Hackney*, 54 Ind. 83.

Hence, if the appellee had any legal right to have the amount thus paid by him refunded, some statute, and not any principle of the common law, gave him that right.

But in 1853 the following statutory provisions were enacted, which will be found in 1 G. & H. 110:

"Sec. 1. Be it enacted by the General Assembly of the State of Indiana, That in all cases where any person or persons, body politic or corporate shall appear before the board of commissioners of any county in this State, and establish by proper proof that such person, body politic or corporate has paid any amount of taxes which were wrongfully assessed against such person, body politic or corporate in such county, it shall be the duty of said board to order the amount so proved to have been paid,

to be refunded to said payer from the county treasury so far as the same was assessed and paid for county taxes.

"Sec. 2. In all cases where a portion of the amount so wrongfully assessed and paid shall have been for state purposes, and shall have been paid into the state treasury, it shall be the duty of the said board of commissioners to certify the amount so proven to have been wrongfully paid to the auditor of state, under the seal of said board of commissioners, and the auditor of state shall thereupon audit the same as a claim against the treasury, and the treasurer of state shall pay the same out of any moneys not otherwise appropriated."

These provisions entitled the tax-payer to recover back money paid for taxes on land not taxable, as was held by this court in the case of Henderson v. The State, ex rel. Overman, 53 Ind. 60. But, pending the action in the court below, the Legislature enacted the following statute, approved February 8th, 1877, Acts 1877, Reg. Sess., p. 139:

"WHEREAS, Under the laws, as heretofore existing, congressional school lands were not taxable until sold, and a doubt has been raised where said lands have been disposed of, and deed has not been delivered, at what time said lands shall be deemed to have been or be sold, so that they would become liable to taxation; and

"WHEREAS, In cases where lands have been sold, part of the pay received, certificate of sale given or record entry made thereof in the proper office, as provided by law, and the purchaser has entered into possession, such lands have been deemed sold, have been assessed and appraised for taxation, and taxes have been levied and collected, as in cases of other land subject to taxation, which assessment, and levy, and collection, it is now claimed, were unauthorized; therefore,

"SECTION 1. Be it enacted by the General Assembly of the State of Indiana, That in all cases where school lands have been sold and certificate has either been issued to the purchaser, or entered of record in the proper office,

or otherwise, so the purchaser entered into possession and paid part or the whole of the purchase-money, or could have entered into occupancy, such sale shall be deemed and held a sale under the law, as much as it would be, had a deed been made and delivered, and the fee had been passed to the purchaser, and such lands shall be deemed and held as having been sold so as to make them liable to taxation within the meaning of the law, as fully and completely as they would have been had deed been delivered; and all appraisements of lands so sold, and all assessments of the same for taxes, and all levies and collections of taxes thereon, heretofore made, shall be and are hereby legalized and declared to be lawful and valid, and shall in nowise be subject to question by reason of such sale not having been consummated by execution and delivery of deed.

" Sec. 2.   No treasurer shall refund any taxes paid, nor shall any board of county commissioners authorize the refunding or repayment of any taxes so levied or collected, nor shall any action be commenced or maintained in any court in this State, nor shall any court have jurisdiction to entertain any action brought to recover taxes so levied and collected as being illegal, by reason of such lands not having been sold, in any case contemplated in the first section of this act.

" Sec. 3.   All school lands, which may be sold, shall be taxable from and after the sale and delivery of certificate, and as other lands, without regard to the delivery of deed of conveyance.

" Sec. 4.   All laws conflicting with the provisions of this act are repealed.

" Sec. 5.   Whereas, numerous claims are being made for return of taxes in the counties of this State, on the pretended illegality referred to in this act, an emergency exists for the immediate taking effect of this act, and it shall be in force from and after its passage."

The 2d section of the act of 1877 is explicit in its terms,

and clearly cuts off any right of action in such cases as that embraced in the finding of the court. It not only provides, that no treasurer shall refund any taxes paid, nor shall any board of commissioners authorize the refunding or repayment of any taxes so levied or collected, but it also provides, that no action shall be commenced or *maintained* in any court in this State, to recover taxes so levied and collected as being illegal, by reason of such lands not having been sold, in any case contemplated by the 1st section of the act. And the 4th section of the act repeals all laws conflicting with the provisions of the act. There is no saving in the repealing clause of pending actions. Indeed, it is plain from the whole act, that the Legislature did not intend to save pending actions. The ground on which an emergency was declared to exist for putting the statute at once in force was, that numerous claims were being made for return of taxes, etc.

The act of 1853, then, so far as it applies to the case made by the finding of the court, was repealed by the act of 1877, while the action was pending. But, as the right of action depended upon the act of 1853, when that act was repealed, so far as it had any application to such case, by the act of 1877, the action could no longer be "maintained." Indeed, the act of 1877 took away the jurisdiction of the court to entertain any such action.

We think it abundantly established by the authorities, that when a right of action, not existing at common law, is given by statute, and the statute is repealed without any saving of pending actions, the repeal takes away the right of action in the pending causes, they not having proceeded to final judgment. "'The effect of a repealing statute,' says a very eminent judge, 'I take to be to obliterate the statute repealed as completely from the records of Parliament as if it had never passed, and that it must be considered as a law that never existed, except for the purposes of those actions or suits which were commenced, prosecuted, and concluded while it was an existing law.'"

Sedgwick on Stat. Constr., 2d ed., p. 108. See, also, cases cited on page 109, in note containing the proposition, that "Pending judicial proceedings based upon a statute, fall to the ground with its repeal."

It was within the constitutional power of the Legislature to repeal the act of 1853, without any saving of pending cases. The Legislature have the power and the right to take away by statute a remedy given by statute, unless rights have vested under the law before its repeal. *Covington, etc., R. R. Co.* v. *Kenton County Court,* 12 B. Mon. 144; *Rice* v. *Wright,* 46 Miss. 679.

There was no vested right to the repayment of the money, as long as the proceedings were pending, and before judgment. The law of 1853, giving the remedy, was not a contract, but a simple statutory provision, which might be repealed at any time, at the will of the Legislature.

We are of opinion, for these reasons, that the court below erred in its conclusions of law upon the facts found.

The judgment below is reversed, with costs, and the cause remanded, with instructions to the court below to render judgment on the findings in favor of the defendant below.