Board of Comm'rs of the County of Decatur *v.* The State, *ex rel.* Hamilton.

## No. 10,519.

THE BOARD OF COMMISSIONERS OF THE COUNTY OF DE-
CATUR *v.* THE STATE, EX REL. HAMILTON.

RAILROAD.—*Public Aid.* — *Mandate.* — *County Commissioners.* — *Relator.*—A
township had regularly voted aid for the construction of a railroad in a
definite sum, as authorized by statute, R. S. 1881, section 4045. A tax of
one per cent. upon the taxables of the township was levied for two years
successively to raise the sum appropriated, as the statute provides, sec-
tion 4056; but, owing to a shrinkage in the aggregate of taxables, these
levies did not produce money sufficient to meet the whole sum appro-
priated.

*Held,* that mandate would lie to compel the board of county commissioners
to make the necessary additional levy.

*Held,* also, that a taxpayer of the township was a proper relator to prose-
cute the suit. WOODS, J., dissents, and HOWK, J., doubts.

From the Decatur Circuit Court.

*W. A. Moore, B. F. Bennett* and *W. H. Goddard,* for ap-
pellant.

*C. Ewing, O. Ewing, Jr.,* and *J. K. Ewing,* for appellee.

NIBLACK, J.—This was a proceeding by the State, on the
relation of William W. Hamilton, against the board of com-
missioners of the county of Decatur, for a mandate to compel
the levying of certain taxes charged to have been voted for
the construction of a railroad. R. S. 1881, section 1167,
*et seq.*

The complaint upon which the proceeding was based stated,
that, on the 19th day of July, 1879, a petition was presented
to the said board of commissioners, purporting to be signed
by twenty-five freeholders of Washington township, in said
county of Decatur, asking that such township be required to
aid in the construction of the Vernon, Greensburgh and Rush-
ville railroad by an appropriation of $75,000, to be invested
in the stock of the company organized to construct said rail-
road; that thereupon said board ordered an election to be held
in said township of Washington, on the 25th day of August,
1879, which election was held accordingly; that the result of

Board of Comm'rs of the County of Decatur *v.* The State, *ex rel.* Hamilton.

that election, as ascertained and declared, was, that a majority of the voters of that township voted in favor of the proposed appropriation; that the taxable property of that township for the year 1878, as shown by the tax duplicate, amounted to the sum of $3,867,635, and for the year 1879, as shown in like manner, to the sum of $3,814,245; that said board, at its regular session in June, 1880, levied a tax of one per cent. on the taxable property of the township, and, at its June session in 1881, made a like levy, to raise money to pay the appropriation voted as above; that of the taxes so levied the sum of $52,400 has been collected and paid over to the proper railroad company, and the sum of $15,600 remains on the proper tax duplicate uncollected; that after said levies of taxes are wholly exhausted, there will remain approximately the sum of $7,000, voted as an appropriation from said township, unlevied, and due the railroad company on account of the same; that the taxable property of said township for the year 1882 amounts to about the sum of $3,500,000; that, on the said 19th day of July, 1879, a petition was also presented to said board, purporting to be signed by twenty-five freeholders of Clinton township, of said county of Decatur, asking an appropriation from said township of the sum of $11,000 to aid in the construction of said Vernon, Greensburgh and Rushville railroad, by taking stock to that amount in the railroad company organized for the construction of such railroad; that thereupon said board also ordered an election to be held in said township of Clinton, on said 25th day of August, 1879, and the result of said election, as ascertained and declared, was that a majority of the duly qualified voters of said township had voted in favor of the appropriation prayed for in the petition; that the taxable property of said township for the year 1878, as shown by the proper tax duplicate, amounted to $574,920; and for the year 1879, as thus shown, to $591,-030; that said board, at its regular June session in 1880, levied a tax of one per cent. on the taxable property of said township of Clinton, and, at its June session of 1881, made an-

other and like levy of one per cent. on said taxable property, to raise money to pay said appropriation from said township; that of said last named levies of taxes the sum of $7,400 has been collected and paid over to the proper railroad company, and the sum of $2,400 remains uncollected; that, after this last named sum shall be collected and paid over as required by law, there will remain approximately the sum of $1,200 of the amount so voted as an appropriation by Clinton township, unlevied and unprovided for; that the taxable property of said township for the year 1882 amounts to about the sum of $500,000; that said railroad has been fully constructed and completed, and the cars are running regularly over the same through said townships of Washington and Clinton, and that said railroad was so constructed and completed largely upon the faith of the appropriations voted by said townships in aid thereof, as above set forth; that said board had, at its June session of 1882, been requested to levy a tax of one-fifth of one per cent. on each one hundred dollars' worth of taxable property in said township of Washington, and to also levy a tax of one-fourth of one per cent. on each one hundred dollars' worth of taxable property of said township of Clinton, for the year 1882, to make up the deficiencies in the amounts heretofore levied to pay the appropriations due from said townships respectively; but that said board had refused to make any levy of taxes to make up such deficiencies; that the relator, Hamilton, was a resident of said township of Washington, and the owner of taxable property in that as well as in Clinton township, and one of the signers of the petition asking for an appropriation from Washington township in aid of the construction of the railroad herein above named. Wherefore an alternative writ of mandate against the board of commissioners was demanded.

The board waived the issuing of the writ against it, and, voluntarily appearing to the action, demurred to the complaint for the alleged insufficiency of the facts relied upon as a cause of action. The demurrer was, however, overruled, and, the

board refusing to answer further, final judgment was rendered against it, ordering it to make additional levies to supply deficiencies in former levies, as it was requested to do at its June session of 1882.

The only question we are required to decide is, was the complaint sufficient upon demurrer to entitle the relator to a writ of mandate against the commissioners?

The first objection made to the complaint, in its natural order, is, that a writ of mandate is not the appropriate remedy in the class of cases to which this belongs; that the levying of taxes in a case like the one now presented involves the exercise of a discretion *quasi*-judicial in its character, and of a kind which the courts can not control by the issuance of such a writ to the tribunal possessing the necessary power to levy the required taxes. The authorities do not, however, sustain the position which the appellant thus seeks to maintain.

The code of 1881 provides that "Writs of mandate may be issued to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, or a duty resulting from an office, trust, or station." R. S. 1881, sec. 1168.

This provision is a simple re-enactment of a precisely similar section of the code of 1852, and confers upon the courts of this State all the powers pertaining to writs of mandate which have usually been exercised by courts in other jurisdictions in the issuing and enforcement of writs of *mandamus.*

High, in his work on Extraordinary Legal Remedies, after referring to the power of the courts to require the performance of certain duties by municipal bodies, at section 382, says: "We come next to a consideration of the principles upon which the taxing power of municipal corporations may be set in motion, to meet their obligations incurred by municipal subscriptions in aid of railway and other kindred enterprises of a quasi-public nature. And it is to be premised that where municipal officers have, by authority of law, pledged the faith of the municipality in aid of such enterprises,

and have issued municipal bonds in payment of their sub-
scriptions to the capital stock, the duty of levying a tax to
meet such obligations is merely a ministerial duty, unattended
with the exercise of any special discretion.  And the rule
may now be regarded as too firmly established to admit of
doubt, that where municipal corporations are authorized ·by
law to subscribe to the stock of railway companies, and to is-
sue their bonds in payment of such subscriptions, and are also
required to levy a tax in payment of the interest upon bonds
thus issued, mandamus will lie on behalf of the bond-holders,
to compel the corporate authorities to levy the necessary tax
in payment of the interest on such bonds.  The conditions
requisite to the exercise of the jurisdiction in this class of cases
are, a clear, legal right in the owners of the bonds, coupled
with a corresponding duty on the part of the municipal au-
thorities to provide the means of payment, and the want of
any other adequate and specific legal remedy."   See, also,
section 389.

The conclusions thus reached by this author rest upon,
and are well supported by, many well considered and leading
cases, and, in principle, fully sustain the authority of the
courts to issue and enforce writs of mandate in cases like the
one before us.   *Huntington* v. *Smith,* 25 Ind. 486 ; *Ex Parte
Loy,* 59 Ind. 235 ; *Jessup* v. *Carey,* 61 Ind. 584 ; *Mayor, etc.,
of Kokomo* v. *State, ex rel.,* 57 Ind. 152 ; *Potts* v. *State, ex rel.,*
75 Ind. 336 ; *Commonwealth* v. *City of Pittsburgh,* 34 Pa. St.
496 ; *Flagg* v. *City of Palmyra,* 33 Mo. 440 ; *People* v. *Mead,*
24 N. Y. 114.

The authorities are somewhat conflicting as to who may be a
relator in a case like this, but the decided weight of authority
is to the effect that where the question is one of public con-
cern, and the object of the mandate is to procure the enforce-
ment of a public duty, the relator need not show that he has
any legal or special interest in the result sought to be accom-
plished.   In such a case it is only necessary that the relator
shall be a citizen, and as such interested in the execution

NOVEMBER TERM, 1882.        13

Board of Comm'rs of the County of Decatur v. The State, ex rel. Hamilton.

of the laws.    High Extraordinary Legal Remedies, sec. 431.    This court is in accord with the weight of authority declared as above, and the doctrine thus announced as to relators has long been recognized as a correct exposition of the law on that subject in this State.    *Hamilton* v. *State, ex rel. Bates,* 3 Ind. 452; *Board of Comm'rs of Clarke Co.* v. *State, ex rel. Lewis,* 61 Ind. 75.

The next and only remaining objection to the complaint is, that, as the levies of taxes for the years 1880 and 1881 amounted to the aggregate sum of two per cent. on the taxable property of the townships of Washington and Clinton, respectively, the power of the board of commissioners to levy taxes to pay the appropriations voted by those townships is exhausted, and that, as the deficiencies in such levies of taxes to pay those appropriations have resulted from shrinkage in the value of the taxable property of the respective townships, a contingency has arisen for which no adequate provision has been made by law, and, consequently, for which no legal remedy has been provided.

By the act of May 12th, 1869, concerning the construction of railroads, as amended by the act of March 8th, 1879, and which is still in force, the several townships of the State were, by certain proceedings upon petition before the boards of commissioners of their respective counties, and by a majority vote of their qualified voters, authorized to take stock in, or to make donations to, railroad companies, to aid in the construction of their roads by appropriating a specified sum for the purpose intended, " not exceeding, however, two per centum upon the amount of the taxable property of such township on the tax duplicate of the county delivered to the treasurer of the county for the preceding year."    1 R. S. 1876, p. 736; R. S. 1881, sec. 4045 *et seq.;* Acts 1879, p. 46.    Section 12 of that act declares that "If a majority of the votes cast shall be in favor of such railroad appropriation, the board of county commissioners, at their ensuing regular June session, shall grant the prayer of said petition, and shall levy a special tax

of at least one-half the amount specified in said petition, but not exceeding one per centum upon the real and personal property in the * * township * * * * * liable to taxation for State and county purposes, which tax shall be collected in all respects as other taxes are collected for State and county purposes; and if the sum so levied shall not be equal to the amount specified in said petition, then the residue thereof shall be levied by said board of county commissioners at the June session of the following year."

Section 13 of the same act further declares that "No township shall be authorized by the provisions of this act to appropriate to railroad purposes, or to raise by taxation for such purpose, to exceed two per centum upon the taxables of such township, as said taxables shall appear upon the tax duplicate of the county, in any one period of two years."

These sections, when taken in connection with other sections of the same act, and particularly with the 1st section, must be construed as meaning that not more than two per centum of the taxable property of a township, as estimated by the tax duplicate of the preceding year, can be appropriated at any one time to aid in the construction of a railroad; nor can more than two per cent. of such taxable property be levied upon the property of the township within a period of two years; but that when an appropriation of not exceeding two per centum of the value of the taxable property of the preceding year has been lawfully made, such an appropriation becomes a binding obligation upon the township, from which it is not discharged by any subsequent shrinkage in the value, or the destruction of any part, of its taxable property.

Where an appropriation is once made, the only limitation upon the taxing power of the board of commissioners to meet and to pay it is, that not more than two per centum of the assessed value of the taxable property of the township shall be levied in any one period of two years.

This was the construction practically given to that act in the cases of Brocaw v. Board of Commissioners, etc., 73 Ind.

543, and of *Gavin* v. *Board of Commissioners, etc.,* 81 Ind. 480, and more particularly in the latter case, and is the only one, in our estimation, which will fully carry into effect the obvious intention of the Legislature in making the enactment.

We have only examined the complaint with reference to the objections made to it, and, considered with reference to those objections, it appears to us to have been sufficient upon demurrer.

The judgment is affirmed, with costs.

HOWK, J., doubts.

### DISSENTING OPINION.

WOODS, C. J.—The principal case shows that the special power given by law to levy taxes for the payment of the appropriation was exercised and exhausted in the manner prescribed by the statute. There is, therefore, no authority for a further levy under the statute. If the unpaid part of the appropriation is a legal obligation against the township, it is one in favor of the railroad company to which the aid was voted, and must be enforced by it in such modes as are known to the practice. Conceding the obligation to be such, I am clear that the relator had no right to bring any action for its enforcement—certainly not this action, which seeks a special levy of a tax for which there is no statutory authority. See *City of Connersville* v. *Connersville Hydraulic Co., post,* p. 235. If an enforceable obligation, the railroad company might have sued upon it, and have obtained an ordinary judgment for its collection. The county commissioners have no more power to levy a special tax for its payment than for the discharge of any other legal or equitable liability of the township to pay money. The township may have money on hand sufficient to pay the demand, and may be ready and willing to pay it, especially when once the proper court shall have declared it bound to do so. No refusal to pay is alleged, and consequently no reason is shown for seeking an extraordinary remedy; certainly not the one sought and awarded in this instance.

The 17th section of the railroad aid law expressly provides that any one of the petitioners, or any taxpayer of the county or township may, by mandate, compel the payment of money collected under the law to the company for whose aid the same shall have been levied and collected; and this court has declared that, under this provision, the company can not prosecute a mandate. "It is expressed as to who may have a mandate, and this expression excludes all others." *Board, etc.*, v. *Louisville, etc., R. W. Co.*, 39 Ind. 192. Under this construction of the law, it is clear that if there had been a failure and refusal by the county board to levy the particular taxes provided for in the act, the relator could have compelled such levies by mandate; but when it is proposed to go beyond the specific taxes authorized by this statute, and under the extraordinary powers of the courts, to compel the levy of taxes for the discharge of a legal liability, it is evident, granting the existence of such liability, that the creditor must apply for the writ. It is not a case for "the enforcement of a purely public right, where the people at large are the real party in interest." In the legal sense, "the relief is sought merely for the protection of private rights," and "the relator must show some personal or special interest in the subject-matter, since he is regarded as the real party in interest and his rights must clearly appear." High Extraordinary Legal Remedies, sec. 431.

But this court, as well as the Supreme Court of Kansas, has decided, and Mr. High, at section 390 of his work, cited *supra*, recognizes the soundness of the distinction, that the mere vote of the electors of a county or township, authorizing the donation or subscription, does not establish a contract relation between the municipal corporation and the railway company. In *Board, etc.*, v. *Louisville, etc., R. W. Co., supra*, this court said that "All the acts of the commissioners and the voters of the county, in taking steps to raise the money, are between themselves, one the principal and the other the agent; there is no contract with the company, nor had she any

right in, or control over, the matter, till the money is raised and the stock taken.". This doctrine is not confined to counties, nor does it rest on the constitutional restriction against the taking of stock by counties without paying the money down. On the contrary, this court has repeatedly applied the same rule to the acts of townships, in voting aid to railroads, under the same statute. *Sankey* v. *Terre Haute, etc., R. R. Co.,* 42 Ind. 402; *Petty* v. *Myers,* 49 Ind. 1; *Jager* v. *Doherty,* 61 Ind. 528; *Bittinger* v. *Bell,* 65 Ind. 445. To same effect, *Union Pacific R. W. Co.* v. *Commissioners, etc.,* 6 Kan. 256.

The theory of these decisions in this respect, as substantially expressed in the Kansas case, is, that the people of a county or township can not, in their primary capacity, enter into contract relations binding upon the municipality, but must act through. their duly constituted agents or officers. The agent, under our statute, is the proper county board; and while in this instance it is shown that the petition and vote were for sums to be invested in the stock of the proposed railroad company, it is not alleged that the board of county commissioners had made, for the townships concerned, a subscription to the stock of the company in any sum whatever. There was, therefore, no contract, or legal liability, which the company, in its own behalf, could enforce.

The principal opinion, as it seems to me, involves a departure, which ought not to be taken, from soundly decided cases.