## PATTERSON and Others *v.* Cox.

SINKING FUND SALES.—REDEMPTION.—The right of a mortgagor, or his assigns, to redeem land sold at a sinking fund sale is governed by the law in force at the time of the sale.

TENDER.—A tender is not objectionable on account of being of a larger sum than the amount due.

VOLUNTARY PAYMENT.—PROTEST.—If a party, with a full knowledge of all the facts, voluntarily pays money in satisfaction of a demand unjustly made upon him, he cannot afterward allege such payment to have been made from compulsion and recover back the money, though he may have protested at the time of such payment that he was not legally bound to pay the same.

Patterson and Others *v.* Cox.

SAME.—The reason of the rule is quite obvious, when applied to a case of payment upon a mere demand of money, unaccompanied with any power or authority to enforce such demand, except by a suit at·law. In such case, if the party would resist any unjust demand he must do so before payment.

APPEAL from the *Marion* Common Pleas.

GREGORY, J.—*Cox* sued *Patterson*, *Talbott* and *Clay* in the court below to recover back money which he alleged they illegally exacted from him. Separate demurrers to the complaint were overruled. The defendants answered by a general denial, with an agreement that all proper matters of defense might be given in evidence. Trial by the court; finding for the plaintiff. Motions for a new trial and in arrest of judgment were overruled. The evidence is in the record.

The case was submitted upon the following agreed state of facts:

In *December*, 1840, *Merryman*, being the owner in fee, executed to the State of *Indiana* a mortgage on certain lands in *Marion* county, and gave his bond in the sum of $300, which mortgage and bond were given to secure a loan of $150 from the "sinking fund." In 1850 *Merryman* sold and conveyed the land to *Cox*, subject to the mortgage. *Cox* paid the interest to the 5th of *December*, 1863. There was then remaining unpaid of the principal of the mortgage, the sum of $100. There was a failure to pay any part of the principal, or interest in advance, for the year commencing on the 5th of *December*, 1863. In consequence of this failure,'the land was legally advertised and sold for such default, at the annual sale of sinking fund lands, by the commissioners of that fund, beginning on the 13th of *December*, 1864, and continuing until the 14th. On which latter day the mortgaged premises were offered for sale by the commissioners for cash, and bid off by *Patterson* at $2,250. Before the land was so sold, the commissioners first offered to sell so much of the premises as was necessary to pay the amount of principal, interest, damages and costs chargeable on the mortgage, being

$116 85, but no one offered to bid that amount for any less quantity than the whole. After the land was bid off by *Patterson*, on the same day, he, with other purchasers of lands at the sale, were informed and notified by the proper officers of the fund, that in consequence of the press of business growing out of such sales, no money could be received on that day, nor until the day following. On the next day, and so soon as the proper officer would receive it, *Patterson* paid his bid. Prior to the payment of the money by *Patterson*, but while he was ready and willing to pay it, on the 15th of *December*, 1864, *Cox*, without the knowledge or consent of *Merryman*, except as such consent might be legally inferred from his purchase of the land from the latter, and his assumption of the mortgage debt, tendered to *Clay*, as the agent and receiver of the sinking fund commissioners, at the office of the fund, and during business hours, the amount of principal, interest, costs and penalty due the fund, which *Clay*, as such receiver, by the advice of *Talbott*, as president of the board of sinking fund commissioners, refused to receive, or to permit the mortgage to be reinstated or redeemed from the sale, unless *Cox* would pay into the fund at the same time five per cent. upon the amount of *Patterson's* bid, for the use of the latter, which sum *Clay* and *Talbott* honestly believed *Patterson* was entitled to on a redemption of the land, but which *Cox* refused to pay, and denied the right of *Patterson* to receive the same. On the 25th of *January*, 1865, *Cox*, with the knowledge of and in company with *Merryman*, repeated the tender, for the purpose of reinstating the mortgage, and offered to pay the accrued interest, but *Clay*, by the advice and procurement of *Talbott*, refused to receive it unless the five per cent. was paid. The plaintiff then tendered to *Clay*, as such receiver, $116 85, being the whole amount of principal, interest, damages and costs due the fund in redemption of the land from the sale, but *Clay*, as such receiver, by the advice of *Talbott*, as such president, and *Patterson*, refused to receive.

it, unless the amount of five per cent. upon the purchase money actually paid in by *Patterson* on the sale was paid into the fund for the use of *Patterson*, which latter amount, being $112 50, together with the amount of principal, interest, damages and costs actually due the fund, was then paid by *Cox* to *Clay*, as such receiver, in redemption of the land; the plaintiff at the time well knowing the facts, and the defendants claiming and honestly believing that *Patterson* was legally entitled to the five per cent. The plaintiff paid the five per cent. under protest. On the 1st of *February*, 1865, *Clay* paid over the five per cent., together with the $2,250, to *Patterson*, which was received and accepted by the latter in redemption of the land. *Talbott* was president of the board of sinking fund commissioners. *Patterson* at no time requested or demanded the money of the plaintiff, but always claimed and believed that on the redemption of the land he would be entitled to the five per cent., and before the payment of the money by the plaintiff to *Clay*, he declared that he would not recognize any payment to *Clay* as a redemption of the land unless the five per cent. was paid in for his use, and that if the land was not redeemed within sixty days from the sale, he would claim and demand a deed for the property; and that if *Clay* or *Talbott* permitted the redemption without the payment of the five per cent., he would institute a suit to compel the execution of a deed at the expiration of the sixty days. The plaintiff, at the time of the sale, was, and ever since has been, in possession of the land, and well knew all the facts touching the claim of *Patterson* to the five per cent. at the time he paid it. He paid it to redeem the premises which he believed he had a right to redeem without paying it, and at the time notified *Clay* not to pay it over to *Patterson*, as he intended to legally test his liability to pay it, of all which *Patterson* had notice before he received the money. *Clay* and *Talbott* did not refuse the tender on the ground that *Cox* was not the mortgagor, but solely for the reason that *Patterson* was entitled

to the five per cent. *Cox* had paid the interest on the mortgage and loan yearly, from the time of his purchase of the land in 1850, up to the time of the default for which the mortgaged premises were sold.

As to the right of the mortgagor or his assigns to redeem, the law in force at the time of the sale must govern. The statute in force at that time, provides "that whenever real estate shall be sold, that has or may be mortgaged to the State on a loan of sinking fund money, or on a loan of any of the funds loaned by the Auditor or Treasurer of State, or as a substitution, the mortgagor, his heirs or assigns, provided five years have not elapsed since the date of the mortgage, shall have the privilege of reinstating said mortgage within sixty days after such sale, by paying into the fund from which the loan was made, the amount of the interest and cost due thereon, and the interest for one year in advance, with five per cent. damages for the use of the purchaser, on the amount of money by him actually paid on his purchase; but if five years have elapsed since the date of the mortgage at the date of sale, that is to say if five years or upwards have then elapsed since the loan was made, then, and in that case, the mortgagor, his heirs or assigns, may reinstate the mortgage at any time within sixty days from the day of sale, by paying into the fund the full amount of all interest and costs due, one-sixth of the principal, and the interest for one year, in advance, on the residue, with five per cent. damages for the use of the purchaser, on the amount actually paid by him in the purchase of the same. Provided, however, that the damages to be paid for the use of the purchaser, as required by this act, shall, where the sale shall be made on a credit, be estimated only on the amount of interest that such purchaser is required to pay in advance on the purchase money, and shall not be estimated on the principal of the purchase money in any case, except where the sale is made for cash." Acts of 1861, § 1, pp. 123, 124.

It is contended that the first tender, made by *Cox* before *Patterson* actually paid the purchase money on the sale to him, did not conform to the provisions of this statute, for the reason that he tendered the whole amount due, instead of tendering the amount of interest and costs due, one-sixth of the principal, and the interest for one year in advance. But the greater includes the less, and the tender was not objectionable on this ground.

*Cox* contends that he was not liable to pay the five per cent. at the time of his first tender, for the reason that *Patterson* had not then actually paid his bid. On the other hand it is urged that as *Patterson* was ready and willing to pay the money at the time of his purchase, and the delay was occasioned by the inability of the receiving officer to receive the money, that the payment, made as soon as it could be received, was, in legal effect, a payment at the time. The payment was undoubtedly a compliance on the part of *Patterson* with his contract of purchase. The only ground on which a ruling could be made that he is not entitled to the five per cent., is that the tender was made before the sale was complete. But it is not necessary for us to rule on this question, as we think the money was paid under circumstances which preclude the plaintiff from the right to recover it back.

A proper tender by *Cox* would have rendered all subsequent proceedings on the part of the sinking fund commissioners to vest the title to the land in *Patterson* void. Both *Cox* and *Patterson* had full knowledge of all the facts. A deed made to *Patterson* for the land, under such circumstances, would have been utterly void. *Cox's* possession could never have been endangered. *Cox* had a plain and adequate remedy to remove the cloud from his title. He was not even bound to wait until *Patterson* took his deed. A court of equity would have relieved him at once.

In the case of *Lima Township* v. *Jenks*, 20 Ind. 301, this court held that an illegal tax voluntarily paid cannot be recovered back, and that to make the payment of such illegal

demand involuntary, it must be made to appear that it was made to release the person or property of the party from detention, or to prevent a seizure of either by the other party, having apparent authority to do so, without resorting to an action at law. The only power with which *Patterson* was clothed, was to take his deed and bring his action for the possession of the land. He had no apparent authority to seize either the person or property of *Cox*, without resorting to an action at law.

The rule is correctly stated in *Boston and Sandwich Glass Co.* v. *The City of Boston*, 4 Metcalf, 181, to be "that if a party, with a full knowledge of all the facts of the case, voluntarily pays money in satisfaction or discharge of a demand unjustly made upon him, he cannot afterward allege such payment to have been made by compulsion, and recover back the money, even though he should protest at the time of such payment that he was not legally bound to pay the same." The court add, that "the reason of the rule and its propriety are quite obvious, when applied to a case of payment upon a mere demand for money, unaccompanied with any power or authority to enforce such demand, except by a suit at law. In such case, if a party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the party of whom the money is demanded, it should precede payment." The court below erred in overruling the defendant's motion for a new trial.

The judgment is reversed, with costs, and the cause remanded, with directions to the court below to grant a new trial, and for further proceedings in accordance with this opinion.

*W. Patterson*, for appellants.

*H. C. Newcomb* and *J. Tarkington*, for appellee.