The Town of Ligonier *v.* Ackerman.

----

## THE TOWN OF LIGONIER *v.* ACKERMAN.

TOWN.—*License to Sell Intoxicating Liquor.*—Where a town in good faith adopted an ordinance requiring a license to be obtained for the retail of intoxicating liquors, in pursuance of the amendatory act of the legislature, of the 11th of March, 1867 (Acts 1867, p. 220), a person who applied for license, and received and paid for the same without objection, cannot recover back the money thus paid, although the act of the legislature, and the ordinances of the town thereunder, are invalid.

PAYMENT.—*Illegal Demand.*—If an individual pays an illegal demand made against him, without legal compulsion, with a full knowledge of the facts and without fraud or imposition, he cannot reclaim it.

SAME.—A mere apprehension of legal proceedings is not sufficient to make a payment compulsory; and where there is a threatened prosecution, the payment must be made under protest, in order to entitle the party to reclaim it.

From the Noble Circuit Court.

*J. H. Baker*, *J. A. S. Mitchell*, and *J. E. Knisely*, for appellant.

*W. A. Woods* and *R. M. Johnson*, for appellee.

BUSKIRK, J.—On the 11th day of March, 1867, an amendatory act was passed by the legislature, and approved by the Governor of the State of Indiana, which provided, among other things, that incorporated towns should have the power to license, regulate, and restrain the sale of spirituous liquors. The act also provided, that, in cases where such licenses were granted, a sum not exceeding double the amount required by the statute of the State might be required to be paid into the treasury of the corporation by the person so licensed, before receiving such license.

As the statute of the State required a license of fifty dollars to be paid into the county treasury, it is evident by this act it was intended to delegate to incorporated towns the right to require a license fee of not to exceed one hundred dollars from each person who should engage in the business of retailing intoxicating liquors within the corporate limits of such town.

The appellant, a duly incorporated town, proceeded by its board of trustees to pass an ordinance, which was to be in force from and after the 1st day of July, 1867, by which she undertook to "regulate and restrain" the sale of intoxicating liquor by forbidding its sale by any person within her corporate limits in a less quantity than a quart, unless they should first give notice, by posting written notices, ten days, in five public places, of their intention to make application for license. The ordinance further provided, that upon satisfactory proof of notice, and upon the applicant's giving satisfactory security to the town that he would keep an orderly and peaceable house, the board of trustees should grant him a license. Before the license was delivered to the applicant, it was required that he should pay to the treasurer of the town the sum of one hundred dollars as a license

fee. It was further provided, that if any person, not being licensed according to the provisions of the ordinance, should sell any intoxicating liquors in a less quantity than a quart at a time, or should sell any intoxicating liquors to be drank on the premises, such persons should, upon conviction, be fined in the sum of one hundred dollars, and that all fines and penalties for the violation of the ordinance should be recovered as provided by law in such cases.

A second ordinance was passed by the appellant's board of trustees, which was to take effect on and after the 15th day of October, 1867. The second ordinance was substantially the same as the first, except that it required twenty days' publication of notice, and provided that a license might be granted for any period not less than six months, nor more than one year. In all other respects, the two ordinances are almost identical.

On the 27th day of November, 1868, a third ordinance was passed, not in any manner affecting the previous ordinances, further than that all licenses should thereafter expire on the first days of January and July of each year.

The foregoing is a brief summary of all the legislation on the subject pertinent to the case, as it remained apparently in force from the date of the passage of the amendatory act first referred to until the November term, 1870, of this court, when it was held, that by reason of the failure to set out the whole of the amended section in the act as amended, the whole amendment was void, and as a consequence all ordinances which were passed under it were void also. *Town of Martinsville* v. *Frieze*, 33 Ind. 507.

This decision was promulgated at the November term, 1870, and two and a half years after that time, the appellee, by his attorneys, addressed a communication to the appellant's board of trustees, advising them that several years prior to that time he had paid into the treasury of the town of Ligonier three hundred and four dollars and seventeen cents for licenses to sell intoxicating liquors, and further informing them that he had paid the same under protest, and

to avoid arrest, fine, and imprisonment; and after communicating to the board of trustees that the ordinances under which the money was paid were null and void, he demanded that the money should be paid back with interest. This demand having been made on the 28th, and the town failing to respond satisfactorily, this suit was instituted on the 29th day of April, 1873, for the purpose of recovering the money alleged to have been paid, with interest.

The complaint is in two paragraphs, both of which are substantially the same. The one seems to be based on the ordinance which went into force July 1st, 1867, and the other upon the ordinance of October 15th, 1867.

It is averred in the complaint that at the times above named the ordinances, the substance of which has been heretofore given, were passed by the appellant's board of trustees; that at the time of the passage of the ordinances, the appellee was engaged in the sale of intoxicating liquors in a less quantity than a quart, in the town of Ligonier, holding a license from the Board of Commissioners of Noble County; that he was desirous of continuing his business, and that for the purpose of avoiding the penalties and forfeitures provided in said ordinances, and to save himself from arrest and imprisonment he was compelled to pay, and did pay to the treasurer of said town, large sums of money for licenses. It then proceeds to charge that the ordinances were adopted and enforced by the appellant, and that the money was extorted from the appellee, without authority of law; that the appellant's officers unlawfully and wrongfully exacted and extorted said moneys from the appellee, and forced and compelled him to pay the same, to avoid arrest, fine, and imprisonment, and refused to permit him to pursue his business of dealing in intoxicating liquors until he paid said money; that he paid the same by compulsion of said authorities, and to avoid arrest, fine, and imprisonment at the hands of appellants, and that he had demanded repayment of the money.

No question was made as to the sufficiency of the complaint.

The appellant answered in three paragraphs. The substance of the first paragraph, after admitting the passage and publication of the ordinance, is,

1. A denial that the appellee paid at the time and in the manner averred.

2. That the appellant acted in good faith, and under competent advice, in the adoption of the ordinance.

3. That after the ordinances were adopted, the appellee, of his own volition, from time to time presented his application for license in accordance with the regulations prescribed in the ordinance, and that such applications were at his request granted.

4. That the licenses were issued to him at his own request, and were received by him, and the price stipulated therefor paid by him without any objection or protest, and without any notice that he intended to question the appellant's right to pass the said ordinance and receive the said moneys for such licenses.

5. That at the time of making the applications, and granting the licenses, both parties acted under the belief that the ordinance was legally passed.

6. A denial on the part of the appellant that she extorted any money from the appellee, or that he paid the money to avoid arrest, fine, and imprisonment.

The second paragraph contains substantially the same averments, viz., the good faith of the appellant in the passage and publication of the ordinance; that the appellee applied for licenses from time to time; that at his request licenses were issued to him; that he paid for the same without any objection whatever, and under the belief that the town had the legal right and authority to pass the ordinance and receive the money for licenses; that the money was paid without notice or protest, etc., with the following additional averments: first, that the appellant used no threats, coercion, or compulsion of any kind whatever, to induce the appellee to apply for and pay for such licenses, other than the passage and publication of the ordinance; and, lastly,

that the money received for licenses has been expended for the common benefit of the citizens of the town, including the appellee.

The third paragraph avers the good faith of the town, and that the appellee, with a large number of other persons, were at the time of the adoption of the ordinance, and have been ever since, engaged, at various public places within the corporate limits of said town, in the business of keeping drinking saloons and tippling houses, their chief business being the sale of intoxicating liquors to be drank as a beverage on their premises; that as a result of their business, which afforded large gains to the persons engaged in it, the appellant was compelled, at great expense, to employ a marshal and policemen to preserve the peace and quiet of the town, and protect the persons and property of her citizens from the violence and riotous conduct of persons who were accustomed to assemble at, and who became intoxicated with liquors procured from, the saloon of the appellee and the others in like manner engaged; that in order to furnish herself with the means necessary to employ marshals and policemen, so as to accomplish the purposes above mentioned, she did, in good faith, pass the ordinance referred to; that after the ordinance was passed, the appellee made application from time to time for license to sell intoxicating liquors within the corporation; that at his request licenses were issued to him, which he received and paid for without objection, believing that the appellant had the right and authority to pass the ordinance and receive the money, and without any notice that he intended to sue to recover the same; that the town used no threats, coercion, or compulsion of any kind whatever, in order to induce the appellee to apply for and pay for such licenses, other than the passage and publication of said ordinance; and that the moneys paid for licenses have been expended in paying for marshals and policemen, who were required to preserve the peace and quiet of the town.

The foregoing abstract of the answer contains the sub-

stance of the material portions of it; there being other averments in it, however, which in their connections are quite material.

The court sustained a demurrer to each paragraph of the answer, on the ground that neither of them stated facts sufficient to constitute a defence to the appellee's claim, and this ruling of the court is the first error assigned, and constitutes the important question in the case.

The ultimate fact to be reached in the case is the state of mind under which the payments were made. If they were made voluntarily, with a full knowledge of all the facts and without fraud or imposition, they are beyond reclamation. If, on the other hand, the money was extorted from the appellee, by so operating upon him as that he was put under duress of person or goods, or if fraud or imposition was practised upon him, he is entitled to receive his money back, for the plain reason that the payment was involuntary.

The demurrer to the first paragraph admitted the truth of the following averments: That the appellee did not pay in the manner alleged in his complaint; that the town did not act wantonly or recklessly, but in good faith, in the adoption of the ordinance, and that it was passed under apparent authority; that the appellee, in pursuance of the regulations in the ordinance prescribed, made application from time to time for license, which at his request was issued to him, and which he received and paid for without any objection whatever; and that both parties acted in good faith, under the belief that the ordinance was legally passed. It is also admitted that the money was not extorted from him, or paid to avoid arrest, fine, and imprisonment, unless the naked fact of the adoption of the ordinance had that effect.

From these admissions, it follows, that unless it can be maintained that the mere adoption and publication of the ordinance will be conclusively presumed to have so constrained the will of the appellee as that his acts were not the voluntary result of his judgment, the ruling of the court below cannot be sustained.

It is a well established rule of law, that if an individual pays an illegal demand, made against him, without legal compulsion, with a full knowledge of the facts, and without any fraud or imposition, he cannot reclaim it. This proposition is so universally conceded, and will be found so often reiterated in the cases, that a citation of authorities cannot be necessary.

From the averments admitted by the demurrer to the answer, it cannot be pretended that there was any mistake of the facts. The facts pertinent to the subject were the passage of an amendatory act by the legislature, the adoption of the ordinance by the town, which required certain things of all persons who desired to continue or engage in the business of retailing liquors in Ligonier, and the further fact that the appellee was then engaged in the business. These facts were as well known to the one party as the other. With a full knowledge of all the facts, without any fraud or imposition, and with a settled conviction in his mind that the law under which he acted was valid, he applied for his licenses, received them, paid for them, without question or objection, and exercised his privilege of selling under them.

It cannot be maintained, either on reason or authority, that an individual who pays a demand, with a full knowledge of all the facts, in the belief that it is a legal duty for him to do so, pays it involuntarily. Nor will an individual be heard to say that he was coerced to do that which he believed the law required of him. The law will presume that every citizen freely and voluntarily discharges every duty which he believes it imposes upon him, and, when it is admitted that there was no fraud, no personal exaction, nothing but the passage and publication of the ordinance—which was done in good faith, and which both parties recognized as valid—then it follows as a conclusion of law that the payment was voluntary.

It is an elementary doctrine of the law, that a citizen will be presumed to perform what it requires of him from the

sentiment that it " is nothing more than what every good man ought both to promise and perform," and because "there is a moral obligation resting upon every individual to obey the laws of the country in which he lives." Sharswood's Blackstone, vol. 1, p. 58, note 15.

In the case of the *Town Council of Cahaba* v. *Burnett,* 34 Ala. 400, the learned judge says: "The ordinances do not appear to have been adopted otherwise than in the fullest confidence of their validity, and it is most probable that the plaintiff's proposal to pay the prescribed sum was under a conviction of legal duty." In the case at bar, the foregoing propositions are not left to mere inference or supposition, for it is expressly admitted that the ordinance was adopted in good faith, and that when the applications were made, and the licenses issued and paid for, both parties acted under the conviction that it was legal and valid.

The case under discussion, then, is much more favorable for the appellant than the case above referred to, for the reason, that in that case, it will be observed, the learned judge considered it mainly upon the theory that the party paid his money under the probable belief that the ordinance was invalid, but constrained to do so by the penalties contained in it. In this case, however, the appellee was fully convinced of the validity of the ordinance; and having that conviction in his mind, it cannot be supposed that he contemplated the infliction of the penalties of the ordinance against one who acquiesced in its validity, and would therefore from a conviction of duty anticipate its requirements. WALKER, C. J., maintained the doctrine in the case above cited, that notwithstanding a person may believe the law which requires of him the payment of a license invalid and oppressive, still, if he pays the demand without any other compulsion than the mere existence of the law which requires it, rather than submit his liability to the arbitrament of the courts, he could not afterward say that he paid under compulsion. The reasoning of the learned judge in the case referred to is exhaustive, and, in our judgment, conclusive

of this case. See, also, *Mayor, etc., of Richmond* v. *Judah,* 5 Leigh, 305.

If, then, the opinion of the court in 34 Ala., *supra,* holding that a payment, made under the belief that it is demanded contrary to law, and under the apprehension of legal proceedings, is not of itself compulsory, is sound, how can the ruling of the court below be maintained, which holds in effect that, notwithstanding the appellee actually believed the ordinance valid, and therefore could have had no thought or apprehension of legal proceedings, yet a payment made in compliance with it was under legal compulsion ?

If the appellee believed the ordinance valid, he recognized it as imposing on him a just obligation, and concurring in the wholesome doctrine of the law, that every one is under a moral obligation to comply with the law of the community in which he lives, he made his application, received his licenses, paid the price stipulated, under a conviction of legal duty, freely, and with an unconstrained will. When, therefore, the premise is admitted that the appellee believed the ordinance to be a valid enactment, the conclusion unavoidably follows that he did not pay under an apprehension of legal proceedings, but from a conviction of legal duty.

The appellee and the town were of the same opinion on the subject of the validity of the ordinance, both recognizing it as binding. In that belief, the appellee published his notice, advising his townsmen that at a certain time he would apply for license. In that belief, he appeared before the board of trustees and convinced them of his fitness, and requested them to issue to him a license. In that belief, when his fitness was determined, he filed his bond, and paid for his license. As a matter of course, there could be no protest, no notice of duress, for the reason that no duress existed. He was acting from a different impulse. He was not pricked by the fear of penalties, but impelled by a sense of duty. He did not regard the ordinance as an illegal contrivance to extort money from him, but he looked upon it as a valid

enactment, which imposed a just obligation upon him, and thus recognizing it he made his application, received and paid for his licenses, and enjoyed the monopoly which they afforded him and the protection which the town was enabled by means of the money thus paid to give him.

//But let us suppose that the money was not paid from a sense of legal duty, but from an apprehension of the consequences which might result to him from the passage and publication of the ordinance; would this render the payment compulsory, there being no threats of a prosecution, no personal execution, or other act of coercion on the part of the appellant, and no duress of person or property, and no objection or protest on the part of the appellant?

It is well settled that the mere existence of the ordinance would not render the payment compulsory. The money must have been exacted by the appellee under a threat of prosecution, and the money must have been unwillingly paid, and under protest. It is settled by the following authorities, that a mere apprehension of legal proceedings is not sufficient to make a payment compulsory, and that where there is a threatened prosecution, the payment must be made under protest: *Harvey* v. *The Town of Olney*, 42 Ill. 336; *Elston* v. *The City of Chicago*, 40 Ill. 514; *Town Council of Cahaba* v. *Burnett*, 34 Ala. 400; *Mayor, etc., of Baltimore* v. *Lefferman*, 4 Gill, 425; *Mays* v. *The City of Cincinnati*, 1 Ohio St. 268; *Baker* v. *The City of Cincinnati*, 11 Ohio St. 534; *Taylor* v. *The Board of Health*, 31 Penn. St. 73; *Borough of Allentown* v. *Saeger*, 20 Penn. St. 421; *Cook* v. *City of Boston*, 9 Allen, 393; *Jenks* v. *Lima Township*, 17 Ind. 326, and cases there cited.

" No one can be heard to say, that he had the right and the law with him, but he feared his adversary would carry him into court, and that he would be unlawfully fined and imprisoned; and that being thereby deprived of his free-will, he yielded to the wrong, and the courts must assist him to a reclamation." *Town Council of Cahaba* v. *Burnett*, 34 Ala. 400.

The Town of Ligonier *v.* Ackerman.

In Maryland, there was an act of the legislature, and an ordinance of the city of Baltimore, passed under it, requiring persons owning certain lands bounded by Jones' Falls to build walls around them on the side next the falls, and prescribing a penalty for the failure to build the walls. An owner of land, under the constraint of the ordinance, having paid the price of building the wall, sued to recover it back. The Maryland court of appeals held that the action could not be maintained. The court, in delivering its judgment, used the following emphatic language: "We consider the doctrine established, that a payment is not to be regarded as compulsory, unless made to emancipate the person or property, from an actual and existing duress. And that a payment made under a distress warrant is not compulsory." *Mayor, etc., of Baltimore* v. *Lefferman,* 4 Gill, 425. See, also, *Morris* v. *Mayor etc., of Baltimore,* 5 Gill, 244.

In South Carolina, a case similar in principle to this arose, in which an effort was made to recover money paid to procure a license under an ordinance afterwards held unconstitutional, and the court sustained the principle here contended for. *Robinson* v. *The City Council of Charleston,* 2 Rich. 317. See, also, *Smith* v. *Hutchinson,* 8 Rich. 260; *Phillips* v. *Jefferson Co.,* 5 Kansas, 412; *Smith* v. *Schroeder,* 15 Minnesota, 35.

The case in 42 Ill., *supra,* involved precisely the same principle as in the present case. Notwithstanding the extraordinary character of the ordinance, and that, as the learned judge observed, there was no pretence of authority for its passage, and notwithstanding the parties protested against the payment, and gave notice that they intended to sue to recover it, and that they paid under duress, still, the learned judge in delivering the judgment of the court says: "We remark in conclusion, that we do not express any opinion on the question as to whether this was a voluntary or compulsory payment. If the money was paid under threats of prosecution, or under a belief, induced by the officers of the town, that only by payment could they escape prosecution,

and was paid by them under protest, such a payment would not be voluntary." The court said that the question, whether the payment was voluntary or compulsory, should have been left to the jury, and that it was because it was not fairly put to the jury that the decision of the court below was reversed. The court did not undertake to modify or disturb the doctrine of the law upon this subject in that state, but cited approvingly the case of *Elston* v. *The City of Chicago*, 40 Ill. 514.

In *Elston* v. *The City of Chicago, supra,* the court say: " We find, then, there was a regular judgment against this property, and that the plaintiffs owning it, voluntarily, and not under process, by one of the parties in interest, paid this money, and we know of no principle of law that can be invoked in their favor, to compel the city to pay it back to them. Although the judgment maybe void, still the payments made by the plaintiffs were voluntary; they were made with a full knowledge of all the facts and circumstances of the case; in ignorance only of their legal rights, without fraud, imposition, or any undue advantage taken of them, and really, for an object they had originated, and the accomplishment of which has benefited their estate. No case can be found, where money has been voluntarily paid, with a full knowledge of the facts and circumstances under which it was demanded, which holds that it can be recovered back, upon the ground that the payment was made under a misapprehension of the legal rights and obligations of the party paying. And it is invariably held, that a payment is not to be regarded as compulsory, unless made to relieve the person or property from an actual and existing duress imposed upon him by the party to whom the money is paid, and such is the tenor of all the cases cited by appellants from *Valpy* v. *Manley*, 50 Eng. C. L. 602, to *Lazell* v. *Miller*, 15 Mass. 207. No well considered case, anywhere, has proceeded upon different principles."

In the case of *Borough of Allentown* v. *Saeger,* 20 Penn. St. 421, the same principle was maintained, the court

saying: "It was submission to legitimate authority which was *prima facie* right in its exercise."

In the case of *Taylor* v. *The Board of Health*, 31 Penn. St. 73, the court, speaking of this subject, used the following language: "The threat that is supposed to underlie such demands is a legally harmless one; that, in case of refusal, the appropriate legal remedies will be resorted to."

These two cases establish the doctrine in Pennsylvania, that an individual may not pay money silently, and in submission to apparent legal authority, and then stand by until the money has been expended for the common benefit, and still maintain an action to recover it, even though he was not liable originally to pay.

METCALF, J., in delivering the judgment of the Supreme Court of Massachusetts, says: "It is an established rule of law, that if a party, with a full knowledge of the facts, voluntarily pays a demand unjustly made on him, and attempted to be enforced by legal proceedings, he can not recover back the money, as paid by compulsion, unless there be fraud in the party enforcing the claim, and a knowledge that the claim is unjust." *Benson* v. *Monroe*, 7 Cush. 125; *Forbes* v. *Appleton*, 5 Cush. 115; *Preston* v. *The City of Boston*, 12 Pick. 7, 14.

In the last of the above cases, it is said: "Threat of legal process is not such duress, for the party may make proof and show that he is not liable;" and in *Forbes* v. *Appleton, supra,* DEWEY, J., says: "A threatened lawsuit is not that species of duress, which will authorize the party to recover back money voluntarily paid on an illegal claim."

It was held by this court in *Jenks* v. *Lima Township*, 17 Ind. 326, that "an illegal tax, voluntarily paid, can not be recovered back; and the payment is regarded as voluntary, unless it be made to procure the release of person or property from the power of the officer; and protest, at the time of payment, in connection with other circumstances, may be evidence that the payment is made for that purpose."

Counsel for appellee have cited a large number of cases as

supporting their position that the payment in question was compulsory.    A brief review of the cases cited will be made.

In *Joyner* v. *The Inhabitants, etc.*, 3 Cush. 567, it was held that payment to a collector of taxes, who has a tax bill and warrant for levying the same, in the form prescribed by law, is not a voluntary, but a compulsory payment; and if the tax so paid be illegally assessed, it may be recovered back by action.

In *Preston* v. *The City of Boston*, 12 Pick. 7, it was held: that if a person pays an illegal tax, in order to prevent the issuing of a warrant of distress, with which he is threatened, and which must issue, of course, unless the tax is paid, the payment is to be deemed compulsory, and not voluntary.

In · *Steele* v. *Williams*, 8 Exchequer, 624, the payment was held compulsory, because the parish clerk required the plaintiff to pay an illegal fee for examining the record book of burials and baptisms.   The court held that the money was illegally demanded, *colore officii*, and that the payment, under the illegal demand, was necessary to the exercise of a legal right, and therefore involuntary.

The case of *Morgan* v. *Palmer*, 2 B. & C. 729, was an action. to recover back money illegally demanded by the mayor of a city as a fee for issuing a license to keep a hotel.   The ground upon which the ruling of the court proceeded will appear from the following extract from the opinion of the court: " It has been well argued that the payment having been voluntary, it can not be recovered back in an action for money had and received.   I agree that such a consequence would have followed had the parties been on equal terms. But if one party has the power of saying to the other, 'that which you require shall not be done except upon the conditions which I choose to impose,' no person can contend that they stand upon anything like an equal footing.   Such was the situation of the parties to this action.   The case is therefore very different from *Brisbane* v. *Dacres*, 5 Taunton, 144, and our judgment must be in favor of the plaintiff."

*The Duke De Cadaval* v. *Collins*, 4 A. & E. 858, was an.

action to recover back money which had been paid by the plaintiff to obtain his discharge from an illegal, malicious, and fraudulent arrest. The court held that the plaintiff was entitled to recover, because the money had been extorted under color of office, as a condition to his discharge from an illegal arrest, which had been made for the purpose of extortion.

The case of *Maxwell* v. *Griswold*, 10 How. 242, was an action to recover back money, which had been illegally demanded by the collector of New York as a condition on which he would deliver to the plaintiff his property.

The case was fully reviewed by this court in *The Lafayette, etc., R. R. Co.* v. *Pattison*, 41 Ind. 312. The ruling in that case was placed upon the ground of moral duress. The court say : " The money was thus obtained by a moral duress, not justified by law, and which was not submitted to by the importer, except to regain possession of his property withheld from him on grounds manifestly wrong."

The court further said : " Now, it can hardly be meant in this class of cases, that to make a payment involuntary, it should be by actual violence or any physical duress. It suffices, if the payment is caused on the one part by an illegal demand, and made on the other part reluctantly and in consequence of that illegality, and without being able to regain possession of his property except by submitting to the payment."

The ruling in the case of *The Town of Princeton* v. *Vierling*, 40 Ind. 340, was based upon the averments in the complaint which were substantially the same as in the present case, which is conceded to be good. This court say : " The complaint is in six paragraphs, and each alleges that the money was extorted from the plaintiff by the officers of the town, and that he paid the same to avoid arrest, fine, and imprisonment," etc. Upon the averments of the complaint, there can be no room to doubt the correctness of the ruling in that case.

The case of *Harvey* v. *The Town of Olney*, 42 Ill. 336,

was an action to recover back money which had been paid by the plaintiffs, as they alleged, under compulsion, to avoid prosecution under an ordinance which required the payment of six hundred dollars by any person exercising the business of a substitute broker or recruiting agent in said town. The court say:

"The first of these instructions was wrong, because if the money was illegally extorted from the appellants by threats of prosecution, or under circumstances which justified them in believing that their only mode of escaping prosecution was by the payment of the money, and they paid it under protest, and with notice that they would bring suit to recover it, and if the town treasurer received it under these circumstances in his official capacity, and acting under said ordinance, then the payment to him was a payment to the corporation, and it was wholly immaterial whether the ordinance had been posted ten days or not."

It was further held that it was no defence to such an action for a town to plead the illegality of its own ordinance; and it is sufficient, if it appear, that the money was paid to avoid fine and imprisonment, and under circumstances sufficient to induce the belief that the provisions of the ordinance would be enforced.

The court further said: "We remark in conclusion, that we do not express any opinion on the question as to whether this was a voluntary or compulsory payment. That question is for the jury, and we reverse the judgment because it was not fairly left to them by the instructions. If the money was paid by the appellants under threats of prosecution, or under a belief, induced by the officers of the town, that only by payment could they escape prosecution, and was paid by them under protest, then such payment can in no just sense be called voluntary. *The County of La Salle* v. *Simmons*, 5 Gilman, 515. Such a state of facts would make this case very unlike the case of *Robinson* v. *The City Council of Charlestown*, 2 Rich. 317, cited by counsel for appellees, and the case of *Elston* v.

*The City of Chicago*, 40 Ill. 514, in both of which the payment was purely voluntary."

The case of *Parker* v. *The Great Western R. W. Co.*, 7 Manning & G. 253, was an action to recover money which had been illegally exacted as a condition of carrying certain packages. The ground of the ruling will sufficiently appear from the following extract from the opinion of the court:

"We are of opinion that the payments were not voluntary. They were made in order to induce the company to do that which they were bound to do without them ; and for the refusal to do which, an action on the case might have been maintained, as was expressly decided in the case of *Pickford* v. *The Grand Junction Railway Company*, 10 M. & W. 399. And, in this respect, the case very much resembles that of —— v. *Pigott*, mentioned by Lord KENYON, in *Cartwright* v. *Rowley*, 2 Esp. N. P. C. 723. That was an action brought to recover back money paid to the steward of a manor, for producing at a trial some deeds and court rolls, for which he had charged extravagantly. The objection was taken that the money had been voluntarily paid, and so could not be recovered back again ; but, it appearing that the party could not do without the deeds, so that the money was paid through necessity, and the urgency of the case, it was held to be recoverable. We think the principle upon which that decision proceeded is a sound one, and strictly applicable in the present case, and that the defendants cannot, by the assistance of that rule of law on which they relied, retain the money that they have improperly received."

*Waterhouse* v. *Keen*, 10 Eng. Com. Law, 310, was an action to recover money, which it was alleged had been illegally exacted by a turnpike company. The court held, that the money was legally exacted and received, and hence the case has no bearing on the present case.

In *Valpy* v. *Manley*, 50 Eng. Com. Law, 592, the sheriff had made an illegal levy of an execution upon the goods of the plaintiff, and was threatening to sell them, and to avoid the sale and regain the possession of his goods, he paid the

amount demanded, and then brought his action to recover the money. The court held the levy illegal, and the payment involuntary. The court say: "All the cases show, that, where a party is in, claiming under legal process, the owner of the goods contending that the possession is illegal, and paying money to avert the evil and inconvenience of a sale, may recover it back in an action for money had and received, if the claim turns out to have been unfounded."

The case of *The County of La Salle* v. *Simmons*, 5 Gilman, 513, is relied upon. There, the board of commissioners were authorized, in establishing a ferry, to receive as a donation from the person to whom the license was granted, the sum of one hundred dollars; but the commissioners demanded of Simmons the sum of five hundred dollars, which he paid under protest, for the purpose of receiving a license, and then sued to recover back the money. The court say: "The money was unlawfully and wrongfully obtained, and cannot in equity and good conscience be retained by the county. The fact that the commissioners chose to call it a donation does not change the real character of the transaction. It was merely a device to obtain money which the county had not the slightest right to demand. The money was exacted from the plaintiff under circumstances that strip the transaction of all the features of a voluntary payment. It was in law and fact a compulsory payment, as much so as the payment of usurious interest, which the lender exacts from the borrower; or the payment of illegal charges, which an officer demands as the condition of the performance of official services."

Again, it is said: "There was a great inequality of condition between the parties. The plaintiff was in the power of the commissioners, and compelled from the necessity of the case to advance the money in order to obtain the license. He was not *particeps criminis*, because acting under restraint and not from choice. *Jaques* v. *Withey*, 1 H. Black. 65; *Browning* v. *Morris*, 2 Cowp. 790; *Williams* v. *Hadley*, 8 East, 378; *Jaques* v. *Golightly*, 2 W. Black. 1073; *Mount*

v: *Waite*, 7 Johns. 434; 1 Story Eq., sec. 300, *et seq.; Ferguson* v. *Sutphen*, 3 Gilman, 547."

In *Ford* v. *Holden*, 39 N. H. 143, the payment was held to be compulsory, because the selectmen of the town had demanded the payment of illegal taxes as the condition upon which his name was to be placed upon the list of voters. It was held to be extortion.

*Pratt* v. *Vizard*, 27 Eng. Com. Law, 198, was an action to recover from an attorney money he had required the plaintiff to pay as the condition on which he would deliver to the plaintiff his title deeds. The court held that the defendant had no claim against plaintiff for services, or lien on the deeds, and consequently that the money was extorted, and having been paid under protest and to regain the possession of his deeds which were wrongfully withheld, he could recover back the money.

The case of *Gibbon* v. *Gibbon*, 76 Eng. Com. Law, 205, was in principle the same as the last case cited. In this case, the defendant refused to deliver certain title deeds until a sum of money was paid. It was paid and recovered back in that action.

In *Ashmole* v. *Wainwright*, 2 Gale & D. 938, the defendants, common carriers, refused to redeliver plaintiff's goods, which they had carried for him, except on payment of five pounds and five shillings charges. The plaintiff insisted that he was not liable to pay anything; but, ultimately, defendants having said that they would take nothing less than the whole sum, he paid the whole sum to regain his goods, protesting that he was not liable to pay anything, and that if he was liable, the charge was exorbitant. The payment was held to be compulsory, and plaintiff recovered the amount in excess of the true charge.

*Follett* v. *Hoppe*, 57 Eng. Com. Law, 226, was an action by an assignee in bankruptcy, to recover from the sheriff a sum of money which the bankrupt had paid to obtain his release from imprisonment, upon the ground that the bankrupt was not subject to arrest and imprisonment upon the *ca. sa.* in the hands of the officer. The plaintiff recovered.

*Hills* v. *Street*, 15 Eng. Com. Law, 358, was an action to recover money which plaintiff had paid to obtain the possession of his goods which had been illegally distrained for rent. The payment was held involuntary, and the plaintiff had judgment.

In *Unwin* v. *Leaper*, 39 Eng. Com. Law, 635, the plaintiff sought to recover back money which he had paid under coercion and to avoid a threatened penal action. The court held the payment illegal and compulsory.

The object of the action in *Oates* v. *Hudson*, 6 Exchequer, 346, was to recover money which had been paid to obtain the possession of title deeds, and the plaintiff recovered.

It was held in *Shaw* v. *Woodcock*, 14 Eng. Com. Law, 14, that a payment, made in order to obtain possession of goods or property to which a party is entitled, and of which he cannot otherwise obtain possession at the time, is a compulsory, and not a voluntary payment, and may be recovered back.

In *Dew* v. *Parsons*, 18 Eng. Com. Law, 87, the question was whether the defendant, in an action brought by the sheriff to recover certain fees, was entitled to set off the payment of illegal and extortionable fees in another action, and it was held that as the fees had been paid under duress and to avoid arrest and imprisonment, the set-off would lie.

In *Payne* v. *Chapman*, 31 Eng. Com. Law, 89, a certificated bankrupt, being arrested on a *ca. sa.* for a debt provable under the commission, paid the money under protest, stating his bankruptcy and certificate, and warning the sheriff that he would apply to the court to have the money paid back. It was held, that this was not such payment of money under legal process with knowledge of the facts, as precluded the bankrupt from recovering back the money.

In *Ripley* v. *Gelston*, 9 Johns. 201, where the collector refused to give a vessel a clearance unless the owner would pay tonnage duty, which was not properly chargeable, and the owner paid the money, the court sustained an action to recover it back.

The case of *Cazenove* v. *Cutler*, 4 Met. 246, where the mortgagee, who was in possession for condition broken, required the mortgagor to pay more than was legally due in order to redeem, and it was paid to avoid a foreclosure, the court held the payment was compulsory and might be recovered back.

The case of *The Lafayette, etc., R. R. Co.* v. *Pattison*, 41 Ind. 312, is much relied upon by counsel for appellee. In that case, the money was paid by the plaintiff to obtain the possession of his cattle, which were held by the railroad company, and who refused to surrender them unless illegal and exorbitant charges were paid. The payment was made under protest, and upon an agreement by the parties that an action should be brought to recover back any sum which was paid in excess of the just and legal charges. The payment was held to be involuntary, because the company, having the possession of the plaintiff's cattle and refusing to deliver them unless the money demanded was paid, possessed an undue advantage of the plaintiff, and took advantage of his pressing necessities to coerce the payment of the money.

In the present case, there was no duress of the person or property of the appellee. There was no exaction or demand of payment other than that created by the existence of the ordinance. There was no threatened prosecution or civil action. There was no remonstrance on the part of the appellee against the illegality of the ordinance, or being forced to make the payment to avoid a greater evil; nor was the payment accompanied with a protest against the illegality of the course pursued toward him. Was there an undue advantage taken of the situation and necessities of the appellee? The solution of this question will depend much upon what would have been the consequences of his failure to obtain a license from the authorities of the town and his selling without a license.

Section 9 of the ordinance in question provided that if any person, not being licensed, should sell any intoxicating liquors, etc., he should be fined, etc.; and section 11 provided that all fines and penalties should be recovered as provided

by law in such cases. Section 23 of the act "for the incorporation of towns and defining their powers," etc., provides that fines, penalties, and forfeitures may be recovered by action in the name of the corporation. It is very obvious from these provisions, that the rights of the appellee, neither as to his person nor property, could have been affected without a resort to legal process. He was neither arrested nor threatened with arrest. He could not have been imprisoned, unless he had failed, upon being arrested, to enter into recognizance for his appearance, or unless he was found guilty upon the trial of the cause. In such action, the appellee might have based his defence upon the invalidity of the ordinance or the unconstitutionality of the act authorizing the passage of such ordinance. Or he might have obtained an injunction, for it is well settled that where a municipal corporation is proceeding to enforce an invalid ordinance, from which loss or damage will result to an individual, an injunction will lie. *Dinwiddie* v. *The President, etc.*, 37 Ind. 66; *The Toledo, etc., R. R. Co.* v. *The City of Lafayette*, 22 Ind. 262; *Greencastle Township, etc.*, v. *Black*, 5 Ind. 557; *The City of Lafayette* v. *Jenners*, 10 Ind. 70; *English* v. *Smock*, 34 Ind. 115; Dillon Municipal Cor., sec. 728, *et seq.* The right to arrest, without process, for violating an ordinance of a city is fully discussed and decided in *Boaz* v. *Tate*, 43 Ind. 60.

Persons who have illegal taxes assessed against them may enjoin the same. If they fail to do so, and voluntarily pay them, their only remedy is an appeal to the law-making powers of the State. *Shoemaker* v. *The Board of Commissioners of Grant County*, 36 Ind. 176. See, also, *City of Evansville* v. *Pfisterer*, 34 Ind. 36; *The Town of Covington* v. *Nelson*, 35 Ind. 532.

If, then, after the passage of the ordinance, the parties had arrived at different conclusions as to its validity, neither one could have reached or affected the other without first appealing to the court; and wherever persons are in that situation, they are on an equal footing.

Where one person has in his own hands the property of

another, which he refuses to surrender, except upon the condition of the payment of an illegal or exorbitant demand, it can be well said that he has an undue advantage. The possession of the property may be a matter of such moment to him that to await the law's delays would be ruinous; but where an individual is in possession of his property, and another asserts the right to control his use of it, if that claim can only be enforced by legal proceedings, no case can be found which holds that the party may tamely surrender his right, with a full knowledge of all the facts, and without fraud or imposition, and then say that he was not on "equal footing" with the other.

It is very obvious that the appellant possessed no power to enforce her ordinance, except by proceedings in court, where the parties would stand upon equal footing, and the validity of the ordinance would be tested. The law is well and accurately stated in *The Boston, etc., Co.* v. *City of Boston,* 4 Met. 481, where it is said: "The legal principle relied upon, on this point, is this; that if a party, with full knowledge of all the facts of the case, voluntarily pays money in satisfaction or discharge of a demand unjustly made on him, he can not afterward allege such payment to have been made by compulsion, and recover back the money, even though he should protest, at the time of such payment, that he was not legally bound to pay the same. The reason of the rule, and its propriety, are quite obvious, when applied to a case of payment upon a mere demand of money, unaccompanied with any power or authority to enforce such demand except by a suit at law. In such case, if the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the party of whom the money is demanded, it should precede payment."

The above language is quoted with approval by this court in *Patterson* v. *Cox,* 25 Ind. 261, and in *The Lafayette, etc., R. R. Co.* v. *Pattison, supra.*

In the most of the cases cited by counsel for appellee, and

which we have examined and reviewed, the money was paid under duress of person or property. Where the payment of money is made upon an illegal demand by one who has the power and authority to arrest and imprison the person, or to levy upon the property of the person upon whom the demand is made, and by sale satisfy such demand, the parties can not treat upon equal terms, and the party upon whom the demand is made is not bound to submit to arrest or the seizure of his property, and then seek his remedy for false imprisonment or trespass, but he may pay the illegal demand and then recover it back. And where money is paid upon an illegal demand, under a controlling necessity, such as to gain the possession of his property or to exercise the right to vote, or the like, the money may be recovered back, although the party knew at the time of the payment that the demand was unjust.

In all the foregoing cases, the person upon whom the illegal and unjust demand is made is bound to act promptly or suffer grievous wrong. He can not afford to wait the law's delay, and if he should not comply with a demand accompanied with the power and authority then and there to enforce it, the remedy given would not be adequate to compensate for the injury sustained. But such is not the present case. If the ordinance in question had been valid, as both the parties believed, then the money would have been lawfully paid upon a legal demand. If, however, the ordinance was invalid, as it was held to be, then the appellee, when sued for failure to comply with its provisions, could have defeated the action by showing the invalidity of the ordinance. There was no pressing and controlling necessity for prompt and immediate payment on the part of the appellee, for he could have waited the decision of the courts without sustaining loss or suffering inconvenience.

It being admitted by the demurrer to the answer, that the licenses were issued to the appellee at his own request, that they were paid for without objection, both parties believing that the ordinance was legal, the conclusion that irresistibly

follows is, that the payment was made under a pure, unmixed mistake of law. The parties, with all the facts before them, sat in judgment upon the validity of the ordinance and the appellee's liability to pay. They came to the unanimous conclusion that the ordinance was good, and that the appellee was liable to pay for licenses; and having reached that conclusion, he paid his money, which was received by the town and expended for the common benefit of her citizens, and, as was said in the case of *Bond* v. *Coats*, 16 Ind. 202, the appellee "having constituted himself a judge in his own case, we are of opinion that the weight of authority is, that he can not be now heard to reverse his own judgment." See authorities cited in the opinion.

Or, in the language of TUCKER, J., in *Mayor, etc., of Richmond* v. *Judah*, 5 Leigh, 305, we say: "For he has undertaken to judge for himself. He has not thought it necessary to submit his rights to a judicial tribunal. He has settled his controversy with his adversary by his own act, and his adversary had a right to presume that that controversy was no longer open and unsettled. He had a right to presume that it was closed forever."

The money having been paid with a full knowledge of all the facts, and without fraud or imposition, and under a mistake of law, it can not be recovered. *Cummins* v. *White*, 4 Blackf. 356; *Downs* v. *Donnelly*, 5 Ind. 496; *Snelson* v. *The State, ex rel. Board of Commissioners of Madison County*, 16 Ind. 29; *Martin* v. *Stanfield*, 17 Ind. 336; *Jenks* v. *Lima Township*, 17 Ind. 326; *Elliott* v. *Swartwout*, 10 Peters, 137.

"One person is not allowed to alter the position of another, and affect his rights by assuming to understand his own legal duty, and pay a claim on the footing of such assumption, and then draw it in question upon the allegation of a mistake of his duty." *Ege* v. *Koontz*, 3 Penn. St. 109.

The appellee applied for a license, with a full knowledge of all the facts, got what he applied for, paid for it, and

enjoyed it. As was said by BERRY, J., in pronouncing the opinion of the court in the case of *Smith* v. *Schroeder*, 15 Minn. 35 : " He pays of his own motion, voluntarily, and under no mistake of facts, to a person who exercises no compulsion over him or his property. The duress, or *quasi* duress, necessary to constitute an involuntary payment does not exist." See, also, a discussion of this subject, by KINGMAN, C. J., 5 Kansas, 412.

In our opinion, the court erred in sustaining the demurrer to the first and second paragraphs of the answer, and the ruling of the court was correct in sustaining the demurrer to the third paragraph of the answer.

The judgment is reversed, with costs ; and the cause is remanded, with directions to the court below to overrule the demurrer to the first and second paragraphs of the answer, and for further proceedings in accordance with this opinion.

PETTIT, J., dissenting.—This suit was brought by the appellee against the appellant, and the case made by the pleadings is this : The appellee was a dealer in and retailer of liquors in the town of Ligonier under and by virtue of a license from the board of commissioners of the county. While this state of facts existed, the town passed an ordinance forbidding such traffic and trade within its limits, without a town license, and the payment of one hundred dollars a year for the same ; and fixing and imposing a penalty of one hundred dollars for each violation of the ordinance ; and the statute, 1 G. & H. 631, sec. 57, provides for imprisonment till any fine imposed by an ordinance of a town shall be paid or replevied. The officers of the town were charged with the enforcement of the ordinance, and two dollars were allowed to the informer in every case when a conviction was had. With this ordinance, a public menace and threat to destroy his then legal business, or compel him to pay money or be imprisoned till he did pay or replevy his fines, he applied for, took, and paid for license under the

ordinance. This was an overpowering advantage on the part of the town, and a sufficient duress of Ackerman to entitle him to recover back the money paid.

Subsequently, it was held by this court, 33 Ind. 507, that the act under which the town ordinance was passed was unconstitutional; and this suit was brought to recover the money paid for license under the ordinance, and the only question presented is, can money paid under this state of facts be recovered back? The court below held in the affirmative, and I fully approve of its action, and cite without quoting, *Steele* v. *Williams*, 8 Exch. 625 ; *Morgan* v. *Palmer*, 9 Eng. C. L. 232, cited in the brief of the appellee, as 317, 319, 320, and 321 ; Same Case, 2 Barn. & Cres. 729, and cases cited ; *Preston* v. *The City of Boston*, 12 Pick. 7 ; *Joyner* v. *The Inhabitants of School District No. 3, etc.*, 3 Cush. 567 ; *The Town of Princeton* v. *Vierling*, 40 Ind. 340 ; *Duke de Cadaval* v. *Collins*, 4 A. & E. 858 ; *Maxwell* v. *Griswold*, 10 How. 242 ; *Harvey* v. *The Town of Olney*, 42 Ill. 336.

The above cases I have examined, and, in my opinion, they fully sustain the ruling of the court below.

I here insert a long list of authorities cited by the counsel for the appellee, but which I have not examined. They may be of interest to the bar in examining similar questions. *Parker* v. *The Great Western Railway Company*, 49 Eng. C. L. 253, 292 ; S. C., 7 Man. & G. 253, 293 ; *Close* v. *Phipps*, 49 Eng. C. L. 586 ; S. C., 7 Man. & G. 586 ; *Waterhouse* v. *Keen*, 10 Eng. C. L. 310 ; S. C., 4 B. & C. 200 ; *Valpy* v. *Manly*, 50 Eng. C. L. 594 ; *The County of La Salle* v. *Simmons*, 10 Gilman, 513 ; *Ford* v. *Holden*, 39 N. H. 143, 145, 146, 147, 148, 149 ; *Pratt* v. *Vizard*, 27 Eng. C. L. 198 ; *Steele* v. *Williams*, 8 Exch. 625 ; *Gibbon* v. *Gibbon*, 76 E. C. L. 205, 213 ; *Ashmole* v. *Wainwright*, 42 Eng. C. L. 938 ; S. C., 2 Q. B. 837 ; *Follett* v. *Hoppe*, 57 Eng. C. L. 225 ; S. C., 5 C. B. 226 ; *Hills* v. *Street*, 15 Eng. C. L. 358 ; S. C., 5 Bingham, 37 ; *Unwin* v. *Leaper*, 39 Eng. C. L. 635 ; S. C., 1 Man. & G. 747 ; *Oates* v. *Hudson*, 6 Exch. 346 ; *Ripley* v. *Gelston*, 9 Johnson, 201 ; *Clinton* v. *Strong*, 9 John-

---

son, 370, 375; *The Boston and Sandwich Glass Company* v. *City of Boston*, 4 Met. 181, 187, 188, 189; *Chase* v. *Dwinal*, 7 Greenl. 134; *Snowdon* v. *Davis*, 1 Taunton, 359; *Shaw* v. *Woodcock*, 14 Eng. C. L. 14; S. C., 7 B. & C. 73; *Hearsey* v. *Pruyn*, 7 Johns. 179; *Dew* v. *Parsons*, 18 Eng. C. L. 87; S. C., 1 Chit. 295; *Payne* v. *Chapman*, 31 Eng. C. L. 89; S. C., 4 A. & E. 364; *Cadaval* v. *Collins*, 31 Eng. C. L. 206; S. C., 4 A. & E. 858; *Bates* v. *The New York Insurance Co.*, 3 Johnson Cases, 238, 240; *Marriott* v. *Brune*, 9 How. 619; *Atwell* v. *Zeluff*, 26 Mich. 118.

I think the judgment should be affirmed.